IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2005 NOV 30 A 11: 18

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| E&H STEEL CONTRACTING, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:05CV1135-F |
| vs. ) | |
| ) | |
| TURNER CONSTRUCTION COMPANY ) | |
| ) | |
| Defendant ) | |

## COMPLAINT

Plaintiff, E&H Steel Contracting, Inc. ("E&H"), files this complaint against Turner Construction Company ("Turner"):

## PARTIES

1.a.    E&H is an Alabama corporation with its principal place of business in Midland City, Dale County, Alabama.

b.    Turner Construction Company is a New York corporation with its principal place of business at 375 Hudson Street, New York, New York, but which is qualified to do and is doing business in Alabama and which may be served with process by service upon its registered agent for service of process, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama, 36109.

## JURISDICTION

2.    This Court has jurisdiction pursuant to 28 U.S.C. §1332 for the reason that there is a complete diversity between the parties and the amount in controversy exceeds the sum of

$75,000, exclusive of interest and costs. Venue is proper under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND FACTS

3. E&H is a structural and miscellaneous steel fabricator which primarily does business in the southeastern United States.

4. E&H submitted its revised proposal to Turner dated April 15, 2004, to fabricate and erect for Turner the structural steel and miscellaneous metal work for the Sarasota Herald-Tribune Project (the "Project") being constructed in Sarasota, Florida, which did not include 100% Fall Protection costs or a Contractors Controlled Insurance Plan ("CCIP") costs because E&H had not been advised or otherwise informed that these items would be required. Apparently, these provisions were contained in Turner's Policy & Procedure Manual which was referenced in the bid documents and requested by E&H but not provided to E&H by Turner prior to April 15, 2004. A true and correct copy of that proposal is included as Exhibit "A" hereto and made a part hereof. At the time E&H submitted its revised proposal, Exhibit "A", E&H was relying upon Turner's scheduled steel erection start date of the first week of August with erection to take ten (10) to twelve (12) weeks.

## 100% FALL PROTECTION AND CCIP COSTS

5. By letter dated April 27, 2004, Turner confirmed its intent to enter into a subcontract with E&H "based upon the scope of the work agreed upon," which did not include 100% Fall Protection or CCIP. A true and correct copy of the letter of intent is attached hereto as Exhibit "B" and made a part hereof.

6. The parties' written subcontract was signed by E&H and returned to Turner on May 11, 2004. A true and correct copy of the subcontract between Turner and E&H, with understandings and modifications contained in E&H's May 11, 2004 cover letter made a part of the parties' subcontract, is attached hereto as Exhibit "C" and made a part hereof.

7. By letter dated May 14, 2004, a true and correct copy of which is attached hereto as Exhibit "D" and made a part hereof, E&H agreed to provide the 100% Fall Protection and CCIP with the understanding that the subcontract price agreed to in Exhibit "C" did not include either.

8. Thereafter, E&H's proposed erector, Mega Steel, upon whose price E&H relied in agreeing to its subcontract price with Turner, refused to agree to include the 100% Fall Protection or to participate in the CCIP program. Therefore, when Turner refused to delete these requirements after being advised of Mega Steel's refusal to include them, E&H was forced to go to another erection subcontractor, Coastal Steel, Inc., at an increased cost of $48,120, which was not included in the parties' subcontract agreement, Exhibit "C".

## DETAILING AND SHOP COSTS

9. E&H and its steel detailer scheduled their detailing and shop fabrication work, respectively, according to the schedule provided by Turner prior to bid and contract and expecting timely approval and return of shop drawings by Turner required for E&H to meet Turner's schedule. As confirmed by Turner's letter of July 7, 2004 to the owner, a true and correct copy of which is attached hereto as Exhibit "E" and made a part hereof, Turner failed to timely approve and return or to require the owner and its representatives to timely approve and

return shop drawings which delayed and increased the cost of E&H and its detailer's performance.

10. In addition, Turner made material design changes during the shop drawing approval process without revising the structural or architectural contract plans which further delayed, interfered with and increased E&H's scope of work and cost of performance.

11. As the proximate result of Turner's failure to timely approve and return shop drawings and recurring design changes (including building size and roof pitch design changes), E&H had to repeatedly change its fabrication and delivery schedule which rendered E&H's shop idle and/or inefficient during the period E&H had committed its shop to perform this work when E&H contracted with Turner. Apparently, E&H's schedule input provided per Turner's request was totally ignored and Turner never provided E&H Steel with any schedule analysis which demonstrated the effect of these delays to E&H on the project's overall schedule.

12. By letter dated July 22, 2004, a true and correct copy of which is attached hereto as Exhibit "F" and made a part hereof, E&H notified Turner that shop drawing approval delays and design changes were disrupting E&H's detailing and fabrication schedule at an estimated cost to E&H of $13,493 per week.

13. By letter dated October 12, 2004, a true and correct copy of which is attached hereto as Exhibit "G" and made a part hereof, E&H submitted its "Request for Equitable Adjustment" to its subcontract with Turner further outlining and explaining its claim for 100% fall protection and CCIP costs and detailing and fabrication delay, disruption and inefficiency costs. By letter dated November 23, 2004, a true and correct copy of which is attached hereto as

4

Exhibit "H" and made a part hereof, E&H submitted its Supplement to its October 12, 2004 letter.

14. Turner acknowledged E&H's entitlement to additional compensation for design revisions and delays but offered to pay only a fraction of E&H's cost as evidenced by Turner's letter of December 17, 2004, a true and correct copy of which is attached hereto as Exhibit "I" and made a part hereof.

15. For the reasons set forth above, E&H is entitled to recover $25,255 in additional reasonable and necessary detailing costs and $95,329 in reasonable and necessary shop downtime cost for the shop time which it had committed to Turner per the parties' subcontract and could not fill with other work despite its best efforts to do so after the promised schedule was not followed by Turner. Additionally, Turner has refused to acknowledge that these delays and design revisions extended the project schedule and entitles E&H to a subcontract time extension.

## STEEL SURCHARGE RISK PAYMENT

16. Per the parties' subcontract agreement, Exhibit "C", SCOPE OF WORK, Article A.15, as a part of the subcontract price, a $50,000 allowance was included as a "not to exceed" sum that E&H could bill against for post-contract unpublished "surcharges" for raw steel materials. In consideration for E&H's agreement to a cap of $50,000 for all post-contract surcharges for which Turner would be liable, Turner agreed that any monies not used from the $50,000 allowance would be deducted less $10,000 that would be retained by E&H in consideration of its acceptance of the risk that those surcharges could exceed $50,000 and thus be E&H's responsibility without reimbursement from Turner. Despite this agreement and even

through the post-contract surcharges were less than $40,000, Turner has wrongfully deducted E&H's $10,000 risk payment from E&H's $12,459 surcharge billing.

## WELDING AND INSPECTION/VERBAL INSTRUCTIONS/MEANS AND METHOD CHANGE COSTS

17.   Turner imposed on E&H and its erection subcontractor revised and extra-contractual steel inspection, welding and erection requirements, including requiring expedited structural steel welding per PCO-089. By letter dated November 24, 2004, a true and correct copy of which is attached hereto as Exhibit "J" and made a part hereof, Turner authorized E&H to proceed with that work.

18.   Turner allowed the architect/engineer to give verbal instructions to E&H's erection subcontractor which changed the subcontractor's means and methods and delayed the erection schedule. Specifically, E&H's erection subcontractor was instructed to field weld any bolted column splice connection which had a gap that a sheet of paper could be stuck into even though those splices had finished ends where the steel connects together, rendering such welding unnecessary and extra-contractual. E&H notified Turner in writing that this work to field weld the approved bolted column splice connections which had finished ends where the steel came together was unnecessary under the AISC Code of Standard Practice for Steel Buildings and Bridges (2000 Ed.). A true and correct copy of E&H's letter of November 30, 2004, is attached as Exhibit "K" and made a part hereof. In addition, the architect/engineer did not allow the second floor and third floor slab on metal deck to be poured prior to all steel through the roof being installed, plumbed, bolted, and welded out including metal deck installation. At the direction of Turner and with reservation of its rights and entitlement to additional time and

6

MockbeeD\pld\20503012.Complaint

compensation, E&H, through its erection subcontractor, proceeded with this extra-contractual and out-of-sequence work at a reasonable and necessary cost of $270,400 (including 5% overhead and 5% profit). Despite repeated demand, Turner has failed and refuses to pay this cost and to acknowledge that this work extended the project schedule and entitles E&H to a subcontract time extension.

## OVERTIME COSTS

19.  At the verbal direction of Turner and with the promise of payment by Turner, E&H worked overtime to help overcome the Turner-caused delays referenced in paragraph 18 above. E&H and its erection subcontractor incurred $30,954 in reasonable and necessary overtime charges (including 5% overhead and 5% profit) in good faith reliance upon Turner's directive and promise to pay. Turner has failed and refused to pay the balance of $12,993 remaining subsequent to Turner C.O. #003. In addition, by written subcontract, Exhibit "C", Article III, TIME OF COMPLETION, Turner promised to pay such directed overtime costs.

## CLEARSTORY TUBE FRAMING CONNECTION MODIFICATION COSTS

20.  Turner directed required extra-contractual work by E&H and its erection subcontractor to field modify the exterior Clearstory Tube framing connections after roof installation. The Clearstory Tubes would not fit between the level 3 embed plates and the roof support beams due to the lack of design tolerance for field conditions. The reasonable and necessary cost of this extra-contractual work is $70,135 (including 5% overhead and 5% profit) which Turner failed and refuses to pay. Additionally, Turner has refused to acknowledge that this work extended the project schedule and entitles E&H to a subcontract time extension.

21. These continuous, unilateral changes, which accelerated and resequenced E&H's work and required E&H to make substantial field modifications to its steel during erection caused E&H to incur substantial additional costs for which Turner is liable to E&H.

## COUNT I

22. E&H incorporates herein by reference all of the preceding numbered paragraphs of this complaint.

23. Turner's continuous, unilateral changes to the project design and schedules and sequences, increased detailing, fabrication and erection costs and altered E&H's original schedule and sequences which were a fundamental part of E&H's pricing of its subcontract work.

24. Turner's continuous, unilateral changes to the project work and schedule and sequences were so different from that originally provided by Turner as to constitute a cardinal change and material breaches by Turner of the parties' subcontract.

25. Turner's material breaches referenced above proximately caused E&H to incur substantial additional costs in at least the amount of $120,584 (detailing and shop downtime), the exact amount to be shown at the trial hereof, for which E&H is entitled to judgment against Turner.

WHEREFORE, E&H prays for the relief requested below.

## COUNT II

26. E&H incorporates herein by reference all of the preceding numbered paragraphs of this complaint.

27. According to the parties' subcontract, Article III, TIME OF COMPLETION AND SCOPE OF WORK, and Article D, SCHEDULING, E&H agreed to perform its work in

accordance with Turner's original pre-contract schedule and to participate and cooperate in the development of a Project Team Schedule and revisions thereto. E&H contracted to and attempted to provide and participate in scheduling by repeatedly providing revised schedules required by project delays not the fault of E&H. Turner, despite its implied obligation to cooperate with E&H and to deal with E&H fairly, in good faith and in a commercially reasonable manner and not make unreasonable demands upon E&H, ignored scheduled impacts upon E&H and continuously rescheduled and resequenced E&H work in an unreasonable and unforeseeable manner so drastically different from the original schedule and sequences as to constitute breaches by Turner of the parties' subcontract and of Turner's implied obligations of cooperation, good faith, fair dealing and commercial reasonableness.

28. Specifically, Turner breached its implied covenant of good faith, fair dealing, and commercial reasonableness, and actively interfered with E&H's performance by:

    a. not adhering to the published progress schedule, or implementing a revised Project Team schedule which resulted in unreasonable delay and interference to E&H's work;

    b. abusing its allowed discretion in scheduling the work by failing to act in good faith in re-scheduling the work based on the mutual interests of Turner and all of its subcontractors;

    c. knowingly delaying E&H's work;

    d. failing to properly coordinate the work of other subcontractors with that of E&H;

9

      e.      directing E&H to wait for other trades to complete their work rather than scheduling those other trades so as to avoid any delay to E&H;

      f.      failing to require the owner and its architect to comply with the time restraints necessary to meet the project schedule;

      g.      ignoring the schedules submitted by E&H;

      h.      not allowing E&H to use the footprint of the building for laydown or its erection subcontractor to set its crane up as close to the center of the structure running North and South as possible;

      i.      allowing the architect/engineer to give verbal instructions to E&H's erection subcontractor which changed the subcontractor's means and methods and delayed the erection schedule;

      j.      not allowing the second floor and third floor slab on metal deck to be poured prior to all steel through the roof being installed, plumbed, bolted, and welded out including metal deck installation.

29.     Turner's breaches proximately caused E&H to incur substantial additional costs (damages) in at least the amount of $474,112, the exact amount to be shown at the trial hereof, for which E&H is entitled to judgment against Turner.

     WHEREFORE, E&H prays for the relief requested below.

### COUNT III

30.     E&H incorporates herein by reference all of the preceding numbered paragraphs of this complaint.

31. In addition to its continual schedule changes and its drastic alterations to the schedule and sequence of E&H's work, Turner also demanded that E&H perform extra and overtime work which E&H did with the expectation that it would be compensated for such extra work. However, despite repeated demand, Turner has failed and refused to pay E&H the approximate amount of $353,528 for extra and overtime work performed by E&H at Turner's direction, and with the understanding that E&H would be paid for such work.

32. Turner's directive that E&H perform extra work and its refusal to compensate E&H for performing such extra work constitutes a material breach of the parties' subcontract, entitling E&H to recover damages proximately caused by such Turner breaches for at least the amount of $353,528, the exact amount to be shown at the trial hereof.

WHEREFORE, E&H prays for the relief requested below.

## COUNT IV

33. E&H incorporates herein by reference all of the preceding numbered paragraphs of this complaint.

34. Turner materially breached the parties' subcontract agreement by failing to reimburse E&H for the 100% Fall Protection and CCIP cost increases not included in E&H subcontract price and in not paying E&H the raw material surcharge and surcharge risk payment, which breaches have proximately damaged E&H in the amount of at least $60,579, the exact amount to be shown on the trial of this cause for which E&H is entitled to judgment against Turner.

WHEREFORE, E&H prays for the relief requested below.

## COUNT V

35. E&H incorporates herein by reference all of the preceding paragraphs of this complaint.

36. E&H has substantially completed its subcontract work in accordance with the terms thereof and in a good and workmanlike manner and has applied for payment for subcontract work performed in pay request #8 dated January 17, 2005, and pay request #9 dated February 18, 2005 in the total amount of $43,028.80 for which Turner has been paid by the project owner and for which Turner has, despite repeated demand, failed and refused to pay E&H.

37. In addition, there is a subcontract balance due to E&H (before the adjustments referenced herein), including retainage, in the amount of $126,923.20 after credits due Turner.

38. Turner's failure and refusal to pay E&H for work performed constitutes a breach of the parties' subcontract for which E&H is entitled to judgment against Turner in at least the amount of $169,952 with interest at the maximum legal rate from the dates due until paid and all costs and prompt payment penalties for such nonpayment.

WHEREFORE, E&H prays for the relief requested below.

## COUNT VI

39. E&H incorporates herein by reference all of the preceding paragraphs of this complaint.

40. E&H performed valuable services for and furnished necessary materials to Turner which Turner needed for its construction of the project and which Turner accepted and has received the benefit of.

41. Turner knew or reasonably should have known that E&H was not voluntarily performing such services or furnishing such materials and that E&H expected to be paid for the reasonable value of such services and materials.

42. E&H reasonably and necessarily incurred at least the amount of $704,642 for labor, services and materials furnished to and accepted by Turner for which E&H is entitled to be paid to avoid unjust enrichment to Turner.

WHEREFORE, plaintiff, E&H Steel Contracting, Inc., demands judgment of and from defendant, Turner Construction Company, for the total amount of at least $704,642 together with interest at the maximum legal rate from the dates due until paid, prompt payment penalties and all costs of this action. E&H further prays for such additional relief to which the Court deems it may be entitled.

    Respectfully submitted,

    E&H STEEL CONTRACTING, INC.

    By its attorneys,

    FARMER, PRICE, HORNSBY &
    WEATHERFORD, L.L.P.

    By: _____
    Elizabeth B. Glasgow (ASB-8348-S58E)
    Edward M. Price, Jr. (ASB-3573-I61E)

Post Office Drawer 2228
Dothan, Alabama 36302
334-793-2424


OF COUNSEL:

DAVID W. MOCKBEE
MARY ELIZABETH HALL
MOCKBEE HALL & DRAKE, P.A.
The Lamar Life Building, Suite 1000
317 East Capitol Street
Jackson, MS 39201
601-353-0035

14

