FORM 36FI REV 2/12/01

**RECEIVED**

MAY 2 4 2004

**E & H STEEL CORP.**

FULLY EXECUTED

Turner Construction Company
800 N. Magnolia Avenue, Suite 500
Orlando, Florida 32803
Telephone (407) 210-2500
Fax (407) 210-2520

## SUBCONTRACT AGREEMENT SUMMARY

Date: April 27, 2004                                                                 Contract No: 9110-001

| | |
|---|---|
| Owner: | Sarasota Herald-Tribune<br>A Division of NYT Management Services<br>229 West 43rd Street<br>New York, NY 10036 |
| Architect/Engineer: | Arquitectonica International Corp<br>550 Brickell Avenue, Suite 200<br>Miami, Florida 33131 |
| Project: | Sarasota Herald-Tribune<br>1741 Main Street<br>Sarasota, Florida |
| Construction Manager: | Turner Construction Company<br>800 N. Magnolia Avenue, Suite 500<br>Orlando, Florida 32803 |
| Subcontractor:<br>Address:<br>City, State, Zip Code:<br>Mailing Address:<br>Phone No:<br>Fax No:<br>Contact Person: | E & H Steel Contracting, Inc.<br>3635 East Highway 134<br>Midland City, Alabama 36350<br>PO Box 511, Midland City, Alabama 36350<br>334-983-5636<br>334-983-6173<br>Bill Grisham |
| Subcontract Price: | $1,417,595.00 |

100% Performance Bond and Payment Bonds: **Subguard**

---

Payment Application Date:   Subcontractor's application for payment is due on the 20th of the month with progress projected through the end of the month.

Retainage Percentage:   (10%) Percent

**EXHIBIT C**

1

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.

Initial
Sub
TCCo

This Agreement, made as of the 27th day of APRIL in the year TWO THOUSAND AND FOUR by and between **TURNER CONSTRUCTION COMPANY**, a New York Corporation, (hereinafter called TURNER) and **E & H STEEL CONTRACTING, INC.**, a Alabama Corporation with an office located at **3635 EAST HIGHWAY 134, MIDLAND CITY, ALABAMA 36350, MAILING ADDRESS: PO BOX 511, MIDLAND CITY, ALABAMA 36350** (hereinafter called the Subcontractor)

**Description Of Work**

Witnesseth, that the Subcontractor and Turner agree as follows:
Article I. The Subcontractor shall perform and furnish all the work, labor, services, materials, plant, equipment, tools, scaffolds, appliances and other things necessary for the **STRUCTURAL STEEL AND MISCELLANEOUS METAL WORK** at the **SARASOTA HERALD-TRIBUNE** (hereinafter called the Project), located on premises at **1741 MAIN STREET, SARASOTA, FLORIDA** (hereinafter called the Premises), as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by **ARQUITECTONICA INTERNATIONAL CORP, 550 BRICKELL AVENUE, SUITE 200, MIAMI, FLORIDA 33131** (hereinafter called the Architect) and with the terms and provisions of the General Contract (hereinafter called the General Contract) between Turner and **SARASOTA HERALD-TRIBUNE, A DIVISION OF NYT MANAGEMENT SERVICES** (hereinafter called the Owner) dated .................. and in strict accordance with the Attachment A, annexed hereto and made a part hereof.

Article II. The Plans, Specifications, General Conditions, Special Conditions, Addenda and General Contract hereinabove mentioned, are available for examination by the Subcontractor at all reasonable times at the office of Turner; all of the aforesaid, including this Agreement, being hereinafter sometimes referred to as the Contract Documents. The Subcontractor represents and agrees that it has carefully examined and understands this Agreement and the other Contract Documents, has investigated the nature, locality and site of the Work and the conditions and difficulties under which it is to be performed and that it enters into this Agreement on the basis of its own examination, investigation and evaluation of all such matters and not in reliance upon any opinions or representations of Turner, or of the Owner, or of any of their respective officers, agents, servants, or employees.

With respect to the Work to be performed and furnished by the Subcontractor hereunder, the Subcontractor agrees to be bound to Turner by each and all of the terms and provisions of the General Contract and the other Contract Documents, and to assume toward Turner all of the duties, obligations and responsibilities that Turner by those Contract Documents assumes toward the Owner, and the Subcontractor agrees further that Turner shall have the same rights and remedies as against the Subcontractor as the Owner under the terms and provisions of the General Contract and the other Contract Documents has against Turner with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full. The terms and provisions of this Agreement with respect to the Work to be performed and furnished by the Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the General Contract and the other Contract Documents.

This Subcontract Agreement, the provisions of the General Contract and the other Contract Documents are intended to supplement and complement each other and shall, where possible, be thus interpreted. If, however, any provision of this Subcontract Agreement irreconcilably conflicts with a provision of the General Contract and the other Contract Documents, the provision imposing the greater duty or obligation on the Subcontractor shall govern.

**Contract Documents**

The parties recognize that problems and disputes between them may occur and that it is preferable for them to reach an amicable resolution of same without the need to resort to formal dispute resolution procedures. In that regard, they each pledge to participate in good faith in voluntary and non-binding Alternate Dispute Resolution (ADR) procedures. However, in the event that such disputes are not resolved by mediation or another ADR procedure as Turner and the Subcontractor may agree then such disputes shall be resolved at Turner's sole option either in the manner and forum pursuant to which disputes between the Owner and Turner are to be resolved under the terms of the General Contract or according to law. Furthermore, the Subcontractor agrees that Turner shall have the exclusive right to join the Subcontractor as a party in any dispute resolution procedure (including without limitation ADR procedures, binding arbitration or other judicial or non-judicial proceeding) between the Owner and Turner, together with such other subcontractors or parties as may be appropriate, where in the judgment of Turner the issues in dispute are related to the work or performance of the Subcontractor. Furthermore, the subcontractor expressly agrees to waive its right to trial by jury in case Turner elects to resolve the dispute in litigation.

Article III. The Subcontractor shall commence the Work when notified to do so by Turner and shall diligently and continuously prosecute and complete the Work and coordinate the Work with the other work being performed on the Project, in accordance with those project schedules as may be issued from time to time during the performance of the Work, and any other scheduling requirements listed in this Agreement, so as not to delay, impede, obstruct, hinder or interfere with the commencement, progress or completion of the whole or any part of the Work or other work on the Project.

**Time of Completion**

The Subcontractor shall participate and cooperate in the development of schedules and other efforts to achieve timely completion of the Work providing information for the scheduling of the times and sequence of operations required for its Work to meet Turner's overall schedule requirements, shall continuously monitor the project schedule so as to be fully familiar with the timing, phasing and sequence of operations of the Work and of other work on the Project, and shall execute the Work in accordance with the requirements of the project schedule including any revisions thereto.

Should the progress of the Work or of the Project be delayed, disrupted, hindered, obstructed, or interfered with by any fault or neglect or act or failure to act of the Subcontractor or any of its officers, agents, servants, employees, subcontractors or suppliers so as to cause any additional cost, expense, liability or damage to Turner including legal fees and disbursements incurred by Turner (whether incurred in defending claims arising from such delay or in seeking reimbursement and indemnity from the Subcontractor and its surety hereunder or otherwise) or to the Owner or any damages or additional costs or expenses for which Turner or the Owner may or shall become liable, the Subcontractor and its surety shall and does hereby agree to compensate Turner and the Owner for and indemnify them against all such costs, expenses, damages and liability.

2

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.

Initial Sub _AC_
TCCo _____

Turner, if it deems necessary, may direct the Subcontractor to work overtime and, if so directed, the Subcontractor shall work said overtime and, provided that the Subcontractor is not in default under any of the terms or provisions of this Agreement or of any of the other Contract Documents, Turner will pay the Subcontractor for such actual additional wages paid, if any, at rates which have been approved by Turner plus taxes imposed by law on such additional wages, plus workers' compensation insurance, liability insurance and levies on such additional wages if required to be paid by the Subcontractor to comply with Subcontractor's obligations under this Agreement.

If, however, the progress of the Work or of the Project be delayed by any fault or neglect or act or failure to act of the Subcontractor or any of its officers, agents, servants, employees, subcontractors or suppliers, then the Subcontractor shall, in addition to all of the other obligations imposed by this Agreement upon the Subcontractor in such case, and at its own cost and expense, work such overtime as may be necessary to make up for all time lost in the completion of the Work and of the Project due to such delay. Should the Subcontractor fail to make up for the time lost by reason of such delay, Turner shall have the right to cause other Subcontractors to work overtime and to take whatever other action it deems necessary to avoid delay in the completion of the Work and of the Project, and the cost and expense of such overtime and/or such other action shall be borne by the Subcontractor.

ARTICLE IV. The sum to be paid by Turner, out of funds received from the owner, to the Subcontractor for the satisfactory performance and completion of the Work and of all of the duties, obligations and responsibilities of the Subcontractor under this Agreement and the other Contract Documents shall be **ONE MILLION FOUR HUNDRED AND SEVENTEEN THOUSAND FIVE HUNDRED AND NINETY FIVE DOLLARS AND NO/100 ($1,417,595..00)** hereinafter called the Price) subject to additions and deductions as herein provided.

**Price**

The Price includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for and in connection with the Work, including but not limited to sales, use and personal property taxes payable by or levied or assessed against the Owner, Turner or the Subcontractor. Where the law requires any such taxes to be stated and charged separately, the total price of all items included in the Work plus the amount of such taxes shall not exceed the Price.

On or before the 20th day of each month the Subcontractor shall submit to Turner, in the form required by Turner, a written requisition for payment showing the proportionate value of the Work installed to the end of the month, from which shall be deducted: a reserve of ten per cent (10%); all previous payments; all amounts and claims against Subcontractor, by Turner or any third party, for which Subcontractor is responsible hereunder; and all charges for services, materials, equipment and other items furnished by Turner to or chargeable to the Subcontractor; and the balance of the amount of such requisition, as approved by Turner and the Architect and for which payment has been received by Turner from the Owner, shall be due and paid to the Subcontractor on or about the twentieth fifth (25) day of the succeeding month or in accordance with the Contract Documents.

**:hly ᴇ͟͞ɪmate**

The obligation of Turner to make a payment under this Agreement, whether a progress or final payment, or for extras or change orders or delays to the Work, is subject to the express condition precedent of payment therefor by the Owner. If Turner has provided payment or performance bonds or a combination payment and performance bond, the obligation of Turner and its surety under any of those bonds to make any payment (whether a progress or final payment) to a claimant on that bond is similarly subject to the express condition precedent of payment therefor by the Owner.

The Subcontractor shall submit with its first requisition for payment a detailed schedule showing the breakdown of the Price into its various parts for use only as a basis of checking the Subcontractor's monthly requisitions.

Turner reserves the right to advance the date of any payment (including the final payment) under this Agreement if, in its sole judgment, it becomes desirable to do so:

The Subcontractor agrees that, if and when requested to do so by Turner, it shall furnish such information, evidence and substantiation as Turner may require with respect to the nature and extent of all obligations incurred by the Subcontractor for or in connection with the Work, all payments made by the Subcontractor thereon, and the amounts remaining unpaid, to whom and the reasons therefor.

**Final Payment**

Final payment to the Subcontractor shall be made only with funds received by Turner from the Owner, the Construction Lender or the Owner's Agent as final payment for Work under the General Contract. Final payment to Turner by the Owner shall be an express condition precedent which must occur before Turner shall be obligated to make final payment to the Subcontractor. In addition, final payment by Turner to the Subcontractor shall not become due and payable until the following other express conditions precedent have been met: (1) the completion and acceptance of the Work by Turner and the Architect; (2) provision by the Subcontractor of evidence satisfactory to Turner that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished, or incurred for or in connection with the Work; (3) execution and delivery by the Subcontractor, in a form satisfactory to Turner of a general release running to and in favor of Turner and the Owner; and (4) complete and full satisfaction of all claims, demands and disputes, and all obligations and responsibilities of Subcontractor, arising out of or related to the Subcontract, including those as between Turner and Subcontractor as well as those between Subcontractor and any third party. Should there] be any such claim, obligation or lien or unsatisfied obligation or responsibility whether before or after final payment is made, the Subcontractor shall pay, refund or deliver to Turner (1) all monies that Turner and/or the Owner shall pay in satisfying, discharging or defending against any such claim, obligation or lien or any action brought or judgment recovered thereon and all costs and expenses, including legal fees and disbursements, incurred in connection therewith; and (2) and such amounts as Turner or Owner shall, in their sole discretion, determine to be an amount sufficient to protect Turner and Owner therefrom (in lieu of payment of such amounts, Subcontractor may, at Owner's and Turner's sole discretion, deliver a bond satisfactory to Turner and Owner). Such refund and payment shall be made within ten (10) days of request by Turner to Subcontractor for same. The final payment shall be due within forty (40) days after all of these express conditions precedent have been met.

3

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.

Initial Sub _ᴧC_
_TCCo_ _____

**Payments Withheld**    If any claim or lien is made or filed with or against Turner, the Owner, the Project, the Premises or the Project funds by any person claiming that the Subcontractor or any subcontractor or other person under subcontract to Subcontractor, or any person or entity employed or engaged by or through Subcontractor at any tier, has failed to make payment for any labor, services, materials, equipment, taxes or other items or obligations furnished or incurred for or in connection with the Work, or if any such claim or lien is filed or presented, or if Turner, in good faith, believes that such a claim or lien may be filed or brought, or if at any time there shall be evidence of such nonpayment or of any claim or lien for which, if established, Turner or the Owner might become liable and which is chargeable to the Subcontractor, or if the Subcontractor or any subcontractor or other person under subcontract to Subcontractor, or any person or entity employed or engaged by or through Subcontractor at any tier, causes damage to the Work or to any other work on the Project, or if the Subcontractor fails to perform or is otherwise in default under any of the terms or provisions of this Agreement, Turner shall have the right (A) to retain from any payment then due or thereafter to become due an amount which it deems sufficient to (1) satisfy, discharge and/or defend against any such claim or lien or any action which may be brought or judgment which may be recovered thereon, (2) make good any such nonpayment, damage, failure or default, and (3) compensate Turner and the Owner for and indemnify and hold them harmless against any and all losses, liability, damages, costs and expenses, including legal fees and disbursements, which may be sustained or incurred by either or both of them in connection therewith ; and (B) to demand that Subcontractor provide, within ten (10) days of Turner's request therefor, proof to the satisfaction of Turner and Owner that such non-payment, claim or lien has been fully satisfied, dismissed and discharged. Upon the failure of Subcontractor to fulfill the requirements of a demand issued by Turner pursuant to subsection (B) above, Turner may, in such manner as Turner may in its sole discretion determine, secure the satisfaction, dismissal and discharge of such claim, by payment or otherwise, and Subcontractor shall within ten (10) days of demand therefor, be liable for and pay to Turner all amounts (including legal fees and disbursements) incurred or suffered by Turner or Owner arising out of or related thereto. Turner shall, in addition, have the right to apply and charge against the Subcontractor so much of the amount retained as may be required for the foregoing purposes. Subcontractor further agrees to indemnify, hold harmless and defend Turner and Owner, upon demand, for any and all such claims, liens, and the costs, expenses (including legal fees and disbursements), damages and liabilities arising out of or related thereto. Subcontractor acknowledges (1) that discharge of such liens or claims by bond imposes liability upon a surety and Turner, and (2) that Turner is not required to discharge such lien or claims by bond when exercising its rights hereunder.

**Payments etc., non Acceptance**    No payment (final or otherwise) made under or in connection with this Agreement shall be conclusive evidence of the performance of the Work or of this Agreement, in whole or in part, and no such payment shall be construed to be an acceptance of defective, faulty or improper work or materials nor shall it release the Subcontractor from any of its obligations under this Agreement; nor shall entrance and use by the Owner constitute acceptance of the Work or any part thereof. The failure of Subcontractor to fully perform and satisfy any or all obligations set forth in this Article IV shall constitute a default, entitling Turner to take action as described in Art. XI.

**Extension of Time**    Article V. Should the Subcontractor be delayed, obstructed, hindered or interfered with in the commencement, prosecution or completion of the Work by any cause including but not limited to any act, omission, neglect, negligence or default of Turner or of anyone employed by Turner or by any other contractor or subcontractor on the Project, or by the Architect, the Owner or their contractors, subcontractors, agents or consultants, or by damage caused by fire or other casualty or by the combined action of workers or by governmental directive or order in no wise chargeable to the Subcontractor, or by any extraordinary conditions arising out of war or government regulations, or by any other cause beyond the control of and not due to any fault, neglect, act or omission of the Subcontractor, its officers, agents, employees, subcontractors or suppliers, then except where the General Contract has specific requirements at variance with the foregoing, in which case the requirements of the General Contract shall govern the Subcontractor shall be entitled to an extension of time for a period equivalent to the time lost by reason of any and all of the aforesaid causes; provided, however, that the Subcontractor shall not be entitled to any such extension of time unless the Subcontractor (1) notifies Turner in writing of the cause or causes of such delay, obstruction, hindrance or interference within forty eight (48) hours of the commencement thereof and (2) demonstrates that it could not have anticipated or avoided such delay, obstruction, hindrance or interference and has used all available means to minimize the consequences thereof. Subcontractor acknowledges that provision of such notice is an essential condition precedent to Subcontractor's rights in connection with any such delays, obstructive hindrances or interferences to Turner's ability to fully identify, and expeditiously, address and avoid such cause or causes, and, accordingly, Subcontractor expressly waives all rights with respect to any such cause or causes for which notice hereunder was not provided. Notwithstanding the foregoing, if the General Contract is at variance with granting such time extension, then the provisions of the General Contract shall control.

The Subcontractor agrees that it shall not be entitled to nor claim any cost reimbursement, compensation or damages for any delay, obstruction, hindrance or interference to the Work except to the extent that Turner has actually recovered corresponding cost reimbursement, compensation or damages from the Owner under the Contract Documents for such delay, obstruction, hindrance or interference, and then only to the extent of the amount, if any, which Turner on behalf of the Subcontractor, actually received from the Owner on account of such delay, obstruction, hindrance or interference. Notwithstanding any term or provision herein to the contrary, Subcontractor expressly waives and releases all claims or rights to recover lost profit (except for profit on work actually performed), recovery of overhead (including home office overhead), and any other indirect damages, costs or expenses in any way arising out of or related to the Agreement, including the breach thereof by Turner, delays, charges, acceleration, loss of efficiency or productivity disruptions and interferences with the performance of the work.

It shall be an express condition precedent to any obligation on the part of Turner to make payment of any such cost, reimbursement, compensation or damages to the Subcontractor hereunder that Turner shall first be determined to be entitled to such compensation on behalf of the Subcontractor and then receive such payment from Owner, and Subcontractor expressly acknowledges that Turner is not obligated or required to pursue Subcontractor claims as against Owner if Turner, in its sole discretion, after review of Subcontractor's claim, has deemed the claim to lack merit in whole or in part.

The Subcontractor agrees that it shall contribute a fair and proportionate share of the costs of advancing the claims of the Subcontractor for delay, including but not limited to legal and other professional fees.

4

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.

Initial Sub _XC_
TCCo _____

| | |
|---|---|
| Freight Charges and Shipments | Article VI. The Subcontractor in making or ordering shipments shall not consign or have consigned materials, equipment or any other items in the name of Turner. Turner is under no obligation to make payment for charges on shipments made by or to the Subcontractor but may, at its option, pay such charges, in which case the Subcontractor shall reimburse Turner for the amount of such payments plus a service charge of twenty-five percent (25%) of the amount so paid. |
| Dimensions | Article VII. Notwithstanding the dimensions on the Plans, Specifications and other Contract Documents it shall be the obligation and responsibility of the Subcontractor to take such measurements as will insure the proper matching and fitting of the Work covered by this Agreement with contiguous work. |
| Shop Drawings | The Subcontractor shall prepare and submit to Turner such shop drawings as may be necessary to describe completely the details and construction of the Work. Approval of such shop drawings by Turner and/or the Architect shall not relieve the Subcontractor of its obligation to perform the Work in strict accordance with the Plans, Specifications, the Additional Provisions hereof and the other Contract Documents, nor of its responsibility for the proper matching and fitting of the Work with contiguous work and the coordination of the Work with other work being performed on the site, which obligation and responsibility shall continue until completion of the Work.

The Subcontractor's submission of a shop drawing to Turner shall constitute the Subcontractor's representation, upon which Turner may rely, that the Subcontractor has reviewed the submission for accuracy and compliance with all Contract Documents and that wherever engineering is required to be performed, same has been performed by a qualified and licensed engineer. Furthermore, the review of the Shop Drawing by Turner shall not constitute an undertaking by Turner to identify deficiencies in the submission, that being an undertaking within the sole responsibility of the Subcontractor. |
| Contiguous Work | Should the proper and accurate performance of the Work hereunder depend upon the proper and accurate performance of other work not covered by this Agreement, the Subcontractor shall carefully examine such other work, determine whether it is in fit, ready and suitable condition for the proper and accurate performance of the Work hereunder, use all means necessary to discover any defects in such other work, and before proceeding with the Work hereunder, report promptly any such improper conditions and defects to Turner in writing and allow Turner a reasonable time to have such improper conditions and defects remedied. |
| Interpretation of Plans and Specifications | Article VIII. The Work hereunder is to be performed and furnished under the direction and to the satisfaction of both the Architect and Turner. The decision of the Architect as to the true construction, meaning and intent of the Plans and Specifications shall be final and binding upon the parties hereto. Turner will furnish to the Subcontractor such additional information and Plans as may be prepared by the Architect to further describe the Work to be performed and furnished by the Subcontractor and the Subcontractor shall conform to and abide by the same.

The Subcontractor shall not make any changes, additions and/or omissions in the Work except upon written order of Turner as provided in Article IX hereof. |
| Change Orders, Additions and Deductions | Article IX. Turner reserves the right, from time to time, whether the Work or any part thereof shall or shall not have been completed, to make changes, additions and/or omissions in the Work as it may deem necessary, upon written order to the Subcontractor. The value of the work to be changed, added or omitted shall be stated in said written order and shall be added to or deducted from the Price.

The value of the work to be changed, added or omitted shall be determined by the lump sum or unit prices, if any, stipulated herein for such work. If no such prices are stipulated, such value shall be determined by whichever of the following methods or combination thereof Turner may elect:
   (a)   By adding or deducting a lump sum or an amount determined by a unit price agreed upon between the parties hereto.
   (b)   By adding (1) the actual net cost to the Subcontractor of labor in accordance with the established rates, including required union benefits, premiums the Subcontractor is required to pay for workmen's compensation and liability insurance, and payroll taxes on such labor, (2) the actual cost to the Subcontractor of materials and equipment and such other direct costs as may be approved by Turner less all savings, discounts, rebates and credits, (3) an allowance of 5% for overhead on items (1) and (2) above, and (4) an allowance of 5% for profit on items (1), (2) and (3) above.

Should the parties hereto be unable to agree as to the value of the work to be changed, added or omitted, the Subcontractor shall proceed with the work promptly under the written order of Turner from which order the stated value of the work shall be omitted, and the determination of the value of the work shall be referred to the Architect whose decision shall be final and binding upon the parties hereto.

In the case of omitted work Turner shall have the right to withhold from payments due or to become due to the Subcontractor an amount which, in Turner's opinion, is equal to the value of such work until such time as the value thereof is determined by agreement or by the Architect as hereinabove provided.

All changes, additions or omissions in the Work ordered in writing by Turner shall be deemed to be a part of the Work hereunder and shall be performed and furnished in strict accordance with all of the terms and provisions of this Agreement and the other Contract Documents. Subcontractor accepts the responsibility to keep its surety informed of all such modifications to its contract. The obligations of Subcontractor and Subcontractor's Surety shall not be reduced, waived or adversely affected by the issuance of such change orders, additions or deductions even if subcontractor fails to inform surety of same and Contractor shall not be required to obtain consent of the surety to such modifications. |

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.



Initia
Sub _ℒC_
TCCo _____

**Inspection and Defective Work**

Article X. The Subcontractor shall at all times provide sufficient, safe and proper facilities for the inspection of the Work by Turner, the Architect, and their authorized representatives in the field, at shops or at any other place where materials or equipment for the Work are in the course of preparation, manufacture, treatment or storage. The Subcontractor shall, within twenty-four (24) hours after receiving written notice from Turner to that effect, proceed to take down all portions of the Work and remove from the premises all materials whether worked or unworked, which the Architect or Turner shall condemn as unsound, defective or improper or as in any way failing to conform to this Agreement or the Plans, Specifications or other Contract Documents, and the Subcontractor, at its own cost and expense, shall replace the same with proper and satisfactory work and materials and make good all work damaged or destroyed by or as a result of such unsound, defective, improper or nonconforming work or materials or by the taking down, removal or replacement thereof.

**Failure to Prosecute, etc.**

Article XI. Should the Subcontractor at any time, whether before or after final payment, refuse or neglect to supply a sufficiency of skilled workers or materials of the proper quality and quantity, or fail in any respect to prosecute the Work with promptness and diligence, or cause by any act or omission the stoppage, impede, obstruct, hinder or delay of or interference with or damage to the work of Turner or of any other contractors or subcontractors on the Project, or fail in the performance of any of the terms and provisions of this Agreement or of the other Contract Documents, or should the Architect determine that the Work or any portion thereof is not being performed in accordance with the Contract Documents, or should there be filed by or against the Subcontractor a petition in bankruptcy or for an arrangement or reorganization, or should the Subcontractor become insolvent or be adjudicated a bankrupt or go into liquidation or dissolution, either voluntarily or involuntarily or under a court order, or make a general assignment for the benefit of creditors, or otherwise acknowledge insolvency, then in any of such events, each of which shall constitute a default hereunder on the Subcontractor's part, Turner shall have the right, in addition to any other rights and remedies provided by this Agreement and the other Contract Documents or by law, after three (3) days written notice to the Subcontractor mailed or delivered to the last known address of the latter, (a) to perform and furnish through itself or through others any such labor or materials for the Work and to deduct the cost thereof from any monies due or to become due to the Subcontractor under this Agreement, and/or (b) to terminate the employment of the Subcontractor for all or any portion of the Work, enter upon the premises and take possession, for the purpose of completing the Work, of all materials, equipment, scaffolds, tools, appliances and other items thereon, all of which the Subcontractor hereby transfers, assigns and sets over to Turner for such purpose, and to employ any person or persons to complete the Work and provide all the labor, services, materials, equipment and other items required therefor. In case of such termination of the employment of the Subcontractor, the Subcontractor shall not be entitled to receive any further payment under this Agreement until the Work shall be wholly completed to the satisfaction of Turner and the Architect and shall have been accepted by them, at which time, if the unpaid balance of the amount to be paid under this Agreement shall exceed the cost and expense incurred by Turner in completing the Work, such excess shall be paid by Turner to the Subcontractor; but if such cost and expense shall exceed such unpaid balance, then the Subcontractor and its surety, if any, shall pay the difference to Turner. Such cost and expense shall include, not only the cost of completing the Work to the satisfaction of Turner and the Architect and of performing and furnishing all labor, services, materials, equipment, and other items required therefor, but also all losses, damages, costs and expenses, (including legal fees and disbursements incurred in connection with reprocurement, in defending claims arising from such default and in seeking recovery of all such cost and expense from the Subcontractor and/or its surety), and disbursements sustained, incurred or suffered by reason of or resulting from the Subcontractor's default. Should Turner take action by effectuating the provisions of this paragraph, and should it subsequently be determined that a termination effectuated by the terms of this Article was improper, such termination shall be treated as a termination for convenience pursuant to Article XX below.

It is recognized that if the Subcontractor institutes or has instituted against it a case under Title 11 of the United States Code (Bankruptcy Code), such event could impair or frustrate the Subcontractor's performance of this Agreement. Accordingly, it is agreed that upon the occurrence of any such event, Turner shall be entitled to request of Subcontractor or its trustee or other successor adequate assurances of future performance. Failure to comply with such request within ten (10) days of delivery of the request shall entitle Turner, in addition to any other rights and remedies provided by this Agreement or by law, to terminate this Agreement. Pending receipt of adequate assurances of performance and actual performance in accordance herewith, Turner shall be entitled to perform and furnish through itself or through others any such labor, materials or equipment for the Work as may be necessary to maintain the progress of the Work and to deduct the cost thereof from any monies due or to become due to the Subcontractor under this Agreement. In the event of such bankruptcy proceedings, this Agreement shall terminate if the Subcontractor rejects this Agreement or if there has been a default and the Subcontractor is unable to give adequate assurance that it will perform as provided in this Agreement or otherwise is unable to comply with the requirements for assuming this Agreement under the applicable provisions of the Bankruptcy Code.

Subcontractor, in addition to any other rights available to Turner hereunder, agrees to indemnify, hold harmless and defend Turner from and against any and all claims, demands, suits, damages, judgments, liabilities, costs and expenses (including legal fees and disbursements) arising out of or related to (a) Subcontractor's breach of any term of the Agreement.

**Loss or Damage to Work**

Article XII. Turner shall not be responsible for any loss or damage to the Work to be erformed and furnished under this Agreement, however caused, until after final acceptance thereof by Turner and the Architect, nor shall Turner be responsible for loss of or damage to materials, tools, equipment, appliances or other personal property owned, rented or used by the Subcontractor or anyone employed by it in the performance of the Work, however caused.

Turner or Owner shall effect and maintain fire insurance (with extended coverage, if specified or otherwise required) upon all Work, materials and equipment incorporated in the Project and all materials and equipment on or about the Premises intended for permanent use or incorporation in the Project or incident to the construction thereof, the capital value of which is included in the cost of the Work, but not including any contractors' machinery, tools, equipment, appliances or other personal property owned, rented or used by the Subcontractor or anyone employed by it in the performance of the Work.

The total value of the property described above as insurable under this Article and as shown on the approved monthly requisition provided for in Article IV, plus the total value of similar property incorporated in the Project or delivered on the Premises during the month but not included in said requisition, as reported by the Subcontractor to Turner for insurance purposes only, shall

6

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.

Initial
Sub _ZC_
TCCo _____

determine the total value of the Subcontractor's work, materials and equipment to be insured under this Article.

**F... rance**

The maximum liability to the Subcontractor under this insurance shall be for not more than that proportion of any loss which the last reported value of the insured property bore to the actual value of said property at the time of such last report, and in no event for more than the actual loss.

In the event of a loss insured under this Article, the Subcontractor shall be bound by any adjustment which shall be made between Turner or the Owner and the insurance company or companies. Loss, if any, shall be made payable to Turner and/or the Owner, as their interests may appear, for the account of whom it may concern

**Cleaning Up**

Article XIII. The Subcontractor shall, at its own cost and expense, (1) keep the Premises free at all times from all waste materials, packaging materials and other rubbish accumulated in connection with the execution of its Work by collecting and depositing said materials and rubbish in locations or containers as designated by Turner from which it shall be removed by Turner from the Premises without charge, (2) clean and remove from its own Work and from all contiguous work of others any soiling, staining, mortar, plaster, concrete or dirt caused by the execution of its Work and make good all defects resulting therefrom (3) at the completion of its Work in each area, perform such cleaning as may be required to leave the area "broom clean", and (4) at the entire completion of its Work, remove all of its tools, equipment, scaffolds, shanties and surplus materials. Should the Subcontractor fail to perform any of the foregoing to Turner's satisfaction, Turner shall have the right to perform and complete such work itself or through others and charge the cost thereof to the Subcontractor.

**Compliance with Law and Permits**

Article XIV. The Subcontractor shall obtain and pay for all necessary permits and licenses pertaining to the Work and shall comply with all federal, state, municipal and local laws, ordinances, codes, rules, regulations, standards, orders, notices and requirements, including but not limited to those relating to safety, discrimination in employment, fair employment practices or equal employment opportunity, and whether or not provided for by the Plans, Specifications, General Conditions, or other Contract Documents, without additional charge or expense to Turner and shall also be responsible for and correct, at its own cost and expense, any violations thereof resulting from or in connection with the performance of its Work. The Subcontractor shall at any time upon demand furnish such proof as Turner may require showing such compliance and the correction of such violations. The Subcontractor agrees to save harmless and indemnify Turner from and against any and all loss, injury, claims, actions, proceedings, liability, damages, fines, penalties, costs and expenses, including legal fees and disbursements, caused or occasioned directly or indirectly by the Subcontractor's failure to comply with any of said laws, ordinances, rules, regulations, standards, orders, notices or requirements or to correct such violations therefore resulting from or in connection with the performance of Work.

**...r to be ...ployed**

Article XV. The Subcontractor shall not employ workers, means, materials or equipment which may cause strikes, work stoppages or any disturbances by workers employed by the Subcontractor, Turner or other contractors or subcontractors on or in connection with the Work or the Project or the location thereof. The Subcontractor agrees that all disputes as to jurisdiction of trades shall be adjusted in accordance with any plan for the settlement of jurisdictional disputes which may be in effect either nationally or in the locality in which the Work is being done and that it shall be bound and abide by all such adjustments and settlements of jurisdictional disputes, provided that the provisions of this Article shall not be in violation of or in conflict with any provisions of law applicable to the settlement of such disputes. Should the Subcontractor fail to carry out or comply with any of the foregoing provisions, Turner shall have the right, in addition to any other rights and remedies provided by this Agreement or the other Contract Documents or by law, after three (3) days written notice mailed or delivered to the last known address of the Subcontractor, to terminate this Agreement or any part thereof or the employment of the Subcontractor for all or any portion of the Work, and, for the purpose of completing the Work, to enter upon the Premises and take possession, in the same manner, to the same extent and upon the same terms and conditions as set forth in Article XI of this Agreement.

Article XVI. The Subcontractor for the Price herein provided, hereby accepts and assumes exclusive liability for and shall indemnify, protect and save harmless Turner and the Owner from and against the payment of:

1. All contributions, taxes or premiums (including interest and penalties thereon) which may be payable under the Unemployment Insurance Law of any State, Federal Social Security Act, Federal, State, County and/or Municipal Tax Withholding Laws, or any other law, measured upon the payroll of or required to be withheld from employees, by whomsoever employed, engaged in the Work to be performed and furnished under this Agreement.

2. All sales, use, personal property and other taxes (including interest and penalties thereon) required by any Federal, State, County, Municipal or other law to be paid or collected by the Subcontractor or any of its subcontractors or vendors or any other person or persons acting for, through or under it or any of them, by reason of the performance of the Work or the acquisition, ownership, furnishing or use of any materials, equipment, supplies, labor, services or other items for or in connection with the Work.

**Taxes and Contributions**

3. All pension, welfare, vacation, annuity and other union benefit contributions payable under or in connection with labor agreements with respect to all persons, by whomsoever employed, engaged in the Work to be performed and furnished under this Agreement.

In furtherance of, and in addition to the agreements, duties obligations and responsibilities of the Subcontractor with respect to the payment of sales, use, personal property and other taxes set forth in Articles IV and XVI of this Agreement, the Subcontractor agrees to reimburse and otherwise indemnify Turner and the Owner for any expenses, including legal fees and litigation arising from, or related to the Subcontractor's failure to pay any sales, use, personal property or other taxes based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for or in connection with the Work.

**Patents**

Article XVII. The Subcontractor hereby agrees to indemnify, protect and save harmless Turner and the Owner from and against any and all liability, loss or damage and to reimburse Turner and the Owner for any expenses, including legal fees and disbursements, to which Turner and the Owner may be put because of claims or litigation on account of infringement or alleged infringement of any letters patent or patent rights by reason of the Work or materials, equipment or other items used by the

7

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.

Initial
Sub XC
TCCo

Subcontractor in its performance.

|                           | |
|---|---|
| **lanics' Liens or Claims** | Article XVIII. Subcontractor acknowledges that its rights to remedies pursuant to Florida's Construction Lien Law shall be governed, to the fullest extent permitted by law, by this clause. Subcontractor agrees that its rights to pursue a lien shall be limited to that portion of its subcontract price which is unpaid and due at the time of filing alien claim under the terms of this subcontract. Subcontractor agrees that it shall not file liens for any sum which is not due hereunder and specifically agrees and covenants that it will not file liens for any sums not within the contract price or written modifications thereto nor shall it file liens for such sums as it may contend are due as damages by reason of delays or other such claims unless such sums are agreed due to Subcontractor by written contract modification. Subcontractor agrees that its lien rights, whatever they may be, are reduced by each payment made to Subcontractor by Turner or any other party on behalf of Turner. |

Subcontractor acknowledges that a claim lien filed by it may be disruptive of Project finances and could have an adverse impact on Turner's relationships with the Owner and its other subcontractors. Therefore, Subcontractor further agrees that if it files a lien claim which is not permitted by law, or which contains claims where are not permissible hereunder or pursuant to law, or which is negligently or purposefully overstated, Turner shall be entitled to receive from Subcontractor all its damages arising therefrom and further be held harmless and indemnified by Subcontractor from all claims of Owner and other subcontractors arising therefrom. The foregoing shall be in addition to all rights and remedies provided by law.

If any subcontractor, laborer, materialman or supplier of the Subcontractor or any other person directly or indirectly acting for, through or under it or any of them files or maintains a lien or claim, whether a mechanics' lien or an attested account or otherwise, a mechanic's lien or claim against the Project or Premises or any part thereof or any interests therein or any improvements thereon or against any monies due or to become due from the Owner to Turner or from Turner to the Subcontractor, for or on account of any work, labor, services, materials, supplies, encumbers equipment or other items performed or furnished for or in connection with the Work or under any change order or supplemental agreement for extra or additional work in connection with the Project, the Subcontractor agrees to cause such liens and claims to be satisfied, removed or discharged at its own expense by bond, payment or otherwise within ten (10) days from the date of the filing thereof, and upon its failure to do so Turner shall have the right, in addition to all other rights and remedies provided under this Agreement and the other Contract Documents or by law, to cause such liens or claims to be satisfied, removed or discharged by whatever means Turner chooses, at the entire cost and expense of the Subcontractor (such cost and expense to include legal fees and disbursements). The Subcontractor agrees to indemnify, protect and save harmless Turner and the Owner from and against any and all such liens and claims and actions brought or judgments rendered thereon, and from and against any and all loss, damages, liability, costs and expenses, including legal fees and disbursements, which Turner and/or the Owner may sustain or incur in connection therewith.

**Assignment and Subletting**

Article XIX. To the fullest extent permitted by law, Subcontractor agrees that it shall not assign, sell, transfer, delegate or encumber any rights, duties or obligations arising under this Agreement including, but not limited to, any right to receive payments hereunder, without the prior written consent of Turner in its sole discretion and the giving of any such consent to a particular assignment shall not dispense with the necessity of such consent to any further or other assignments. In the event Subcontractor assigns, sells, encumbers or otherwise transfers its right to any monies due or to become due under this Agreement as security for any loan, financing or other indebtedness (hereafter "Assignment"), notification to Turner of such Assignment must be sent by certified mail, return receipt requested, to the Purchasing Manager in charge of the business unit responsible for the construction of the Project and the Assignment shall not be effective as against Turner until Turner provides its written consent to such Assignment. Subcontractor agrees that any such Assignment shall not relieve the Subcontractor of any of its agreements, duties, responsibilities or obligations under this Agreement and the other Contract Documents and shall not create a contractual relationship or a third party beneficiary relationship of any kind between Turner and such assignee or transferee. Subcontractor further agrees that all of Turner's defenses and claims arising out of this Agreement with respect to such Assignment are reserved unless expressly waived in writing by a duly authorized corporate officer. Subcontractor hereby agrees to indemnify and hold harmless Turner from and against any and all loss, cost, expense or damages Turner or Owner has or may sustain or incur in connection with such Assignment.

**Termination for Convenience**

Article XX. Turner shall have the right at any time by written notice to the Subcontractor, to terminate this Agreement without cause and require the Subcontractor to cease work hereunder {, in which case, provided the Subcontractor be not then in default, Turner shall indemnify the Subcontractor against any damage directly resulting from such termination}. In the event of such a termination for convenience, the Subcontractor shall be entitled to payment pursuant to the terms of the subcontract for all Work performed as of the date of termination, together with reasonable costs of demobilization and such other reasonable costs as may be encountered by the Subcontractor and directly attributable to such termination provided that such amount shall be reduced by all amounts for which Subcontractor is liable or responsible hereunder. However, the Subcontractor shall only be entitled to profit on that portion of the work actually performed and approved for payment to the date of termination together with retainages held upon payments made prior thereto. Subcontractor waives any claim for loss of anticipated profits or other damages in the event Turner exercises this clause.

Article XXI. The Subcontractor hereby guarantees the Work to the full extent provided in the Plans, Specifications, General Conditions, Special Conditions and other Contract Documents.

**Guarantees**

The Subcontractor shall expeditiously remove, replace and/or repair at its own expense and at the convenience of the Owner any faulty, defective or improper Work, materials or equipment existing or discovered within one (1) year from the date of the acceptance of the Project as a whole by the Architect and the Owner or for such longer period as may be provided in the Plans, Specifications, General Conditions, Special Conditions or other Contract Documents.

Without limiting the generality of the foregoing, the Subcontractor warrants to the Owner, the Architect and Turner, and each of them, that all materials and equipment furnished under this Agreement will be of first class quality and new, unless otherwise required or permitted by the other Contract Documents, that the Work performed pursuant to this Agreement will be free from defects and that the Work will strictly conform with the requirements of the Contract Documents. Work not conforming to such requirements, including substitutions not properly approved and authorized, shall be considered defective. All warranties contained in this Agreement

8

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.

Sub _XC_  Initia
TCCo _____

and in the Contract Documents shall be in addition to and not in limitation of all other warranties or remedies required and/or arising pursuant to applicable law. Failure of Subcontractor to honor and satisfy the foregoing and any other warranties or guarantees required of the Subcontractor under the Contract Documents, shall constitute a default by Subcontractor.

Article XXII. The Subcontractor agrees that the prevention of accidents to workmen and property engaged upon or in the vicinity of the Work is its responsibility. The Subcontractor agrees to comply with all Federal, State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices and requirements concerning safety as shall be applicable to the Work, including, among others, the Federal Occupational Safety and Health Act of 1970, as amended, and all standards, rules, regulations and orders which have been or shall be adopted or issued thereunder, and with the safety standards established during the progress of the Work by Turner. When so ordered, the Subcontractor shall stop any part of the Work which Turner deems unsafe until corrective measures satisfactory to Turner have been taken, and the Subcontractor agrees that it shall not have nor make any claim for damages growing out of such stoppages. Should the Subcontractor neglect to take such corrective measures, Turner may do so at the cost and expense of the Subcontractor and may deduct the cost thereof from any payments due or to become due to the Subcontractor. Failure on the part of Turner to stop unsafe practices shall in no way relieve the Subcontractor of its responsibility therefor.

**Accident Prevention**

This Subcontractor acknowledges the receipt of Turner's "Safety, Health and Environmental Policy", "Drug and Alcohol Abuse Policy" and Sexual Harassment Policy ". Subject to applicable law this Subcontractor further agrees to be bound to these policies as a part of the supplemental and special conditions to the contract for construction of the project.

In the event that hazardous substances of a type of which an employer is required by law to notify its employees are being used or stored on the site by the Subcontractor, the Subcontractor's sub-subcontractor and anyone directly or indirectly employed or otherwise retained by them or either of them, the Subcontractor shall immediately provide written notice of the chemical composition thereof (including, without limitation, a copy of the applicable Material Safety Data Sheet) to Turner in sufficient time to permit compliance with such laws by Turner, other subcontractors and other employers on the site. In the event that the Subcontractor encounters on the site material reasonably believed to be hazardous substances (including, without limitation, asbestos or polychlorinated biphenyl) which has not been rendered harmless, the Subcontractor shall immediately stop Work in the area affected and immediately report the condition to Turner in writing. Work in the affected area shall resume when such hazardous substances have been rendered harmless or removed as determined by Turner in its sole and absolute discretion. To the extent of Subcontractor's responsibilities hereunder, Subcontractor does indemnify and save harmless Turner from and against any and all loss, injury, claims, actions, proceedings, liability, damages, fines, penalties, cost and expenses, including legal fees and disbursements, caused or occasioned directly or indirectly by the Subcontractor in regard to such hazardous substances.

**Liability for Damage and Personal Injury**

Article XXIII. The Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of any tier of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work, or in preparation for the Work, or any extension, modification, or amendment to the Work by change order or otherwise. Except to the extent, if any, expressly prohibited by statute and excluding from this indemnity such acts or omissions, if any, of the party indemnified for which it is not legally entitled to be indemnified by the Subcontractor under applicable law, should any claims for such damage or injury (including death resulting therefrom) be made or asserted, whether or not such claims are based upon Turner's or the Owner's alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of Turner or the Owner, the Subcontractor agrees to indemnify and save harmless Turner and the Owner, their officers, agents, servants and employees from and against any and all such claims and further from and against any and all loss, cost, expense, liability, damage, penalties, fines or injury, including legal fees and disbursements, that Turner and the Owner, their officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof and the Subcontractor agrees to and does hereby assume, on behalf of Turner and the Owner, their officers, agents, servants and employees, the defense of any action at law or in equity which may be brought against Turner and/or the Owner, their officers, agents, servants or employees upon or by reason of such claims and to pay on behalf of Turner and the Owner, their officers, agents, servants and employees, upon demand, the amount of any judgment that may be entered against Turner and/or the Owner, their officers, agents, servants or employees in any such action. In the event that any such claims, loss, cost, expense, liability, damage, penalties, fines or injury arise or are made, asserted or threatened against Turner and/or the Owner, their officers, agents, servants or employees, Turner shall have the right to withhold from any payments due or to become due to the Subcontractor an amount sufficient in its judgment to protect and indemnify Turner and the Owner, their officers, agents, servants and employees from and against any and all such claims, loss, cost, expense, liability, damage, penalties, fines or injury, including legal fees and disbursements, or Turner in its discretion may require the Subcontractor to furnish a surety bond satisfactory to Turner guaranteeing such protection, which bond shall be furnished by the Subcontractor within five (5) days after written demand has been made therefor.

In addition to Turner and the Owner, the Indemnified Parties throughout this Agreement shall include: Design Professionals their officers, agents, servants and employees from and against any and all such claims, loss, cost, expense, liability, damage, penalties, fines or injury, including legal fees and disbursements.

<u>In consideration of all the indemnification provisions contained in Article XXIII of this Agreement, Turner shall pay unto the Subcontractor the specific amount of $500.00 which payment is contained in the total Price mentioned in Article IV of this Agreement</u> and which is a part of the project specifications or bid documents, if any.

In furtherance to but not in limitation of the indemnity provisions in this Agreement, Subcontractor hereby expressly and specifically agrees that its obligation to indemnify, defend and save harmless as provided in this Agreement shall not in any way be affected or diminished by any statutory or constitutional immunity it enjoys from suits by its own employees or from limitations of liability or recovery under worker's compensation laws.

Before commencing the Work, the following insurance coverages from insurance companies satisfactory to Turner shall be in

9

Project #9110                                                                                              Initia
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal                            Sub  XC
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.                    TCCo _____

place and maintained until completion and final acceptance of the Work

    1. WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE in accordance with laws of the State in which the Work is situated.

    2. COMMERCIAL GENERAL LIABILITY INSURANCE INCLUDING COMPLETED OPERATIONS, CONTRACTUAL LIABILITY INSURANCE AGAINST THE LIABILITY ASSUMED HEREINABOVE, and including INDEPENDENT CONTRACTORS LIABILITY INSURANCE if the Subcontractor sublets to another all or any portion of the Work, Personal Injury Liability, Broad Form Property Damage (including completed operations), and Explosion, Collapse and Underground Hazards, with the following minimum limits:(Coverage shall be equivalent to ISO Occurrence Form 1996)

Combined Single Limit $5,000,000.00

A) The above insurance coverages shall be provided by insurance companies selected by the Subcontractor. All costs are included in the Price and are to be paid by the Subcontractor.

or

B) The above insurance coverages shall be provided through a consolidated insurance program arranged by Turner. **$ TBD** (The "Insurance Cost") is included in the Price to pay for the premiums for the above insurance coverages for this Subcontractor and its sub-subcontractors. Subcontractor shall include this Insurance Cost in its Application(s) for Payment (which Applications are to be submitted to Turner as provided herein) when and as directed by Turner. Turner will, when due, on behalf of the Subcontractor, make such payment by delivering the Insurance Cost (or the portion of the Insurance Cost that was included in the Application for Payment) to the relevant Worker's Compensation and General Liability insurance companies and Turner will deliver the balance of the Application for Payment due for Work completed to the Subcontractor. Upon completion of the enrollment process in the consolidated insurance program, the Subcontractor and its sub-subcontractors will be provided with their own individual Worker's Compensation Policy by the consolidated insurance administrator and will be a named insured under the General Liability policy issued on the project on behalf of Turner and its designated Subcontractors. The Subcontractor will incur a premium expense payable through Turner for such premium and Subcontractor hereby commits to record these costs as outlined above. All executed change orders will include an additional premium for Worker's Compensation and General Liability as applicable and will be included in Applications for Payment submitted to Turner, expensed by the Subcontractor and the premium paid by Subcontractor through Turner, as outlined above.

or

C) The above insurance coverages shall be provided through an Owner Controlled Insurance Program (OCIP) as described in the Contract Documents.

Before commencing the Work, the Subcontractor shall procure and maintain, at is own expense, until completion and final acceptance of the Work at least the following insurance from insurance companies satisfactory to Turner

    3. COMMERCIAL AUTOMOBILE LIABILITY INSURANCE covering all owned, non-owned and hired automobiles used in connection with the Work, with the following minimum limits:

Bodily Injury (including death) $1,000,000.00   per accident
and Property Damage

Before commencing the Work, the Subcontractor shall furnish a certificate, satisfactory to Turner from each insurance company showing that {the above insurance is in force, stating policy numbers, dates of expiration, and limits of liability thereunder, and further providing that the insurance will not be canceled or changed until the expiration of at least thirty (30) days after written notice of such cancellation or change has been mailed to and received by Turner. Turner, the Owner and other entities as may be reasonably requested shall be named as an additional insured under these policies of insurance. It is expressly agreed and understood by and between Subcontractors and Turner that the insurance afforded the additional insureds shall be primary insurance and that any other insurance carried by Turner shall be excess of all other insurance carried by the Subcontractor and shall not contribute with the Subcontractor's insurance. Subcontractor further agrees to provide endorsements on its insurance policies which shall state the foregoing; however, Subcontractor's failure to provide such endorsement shall not affect Subcontractor's agreement hereunder.

If the Subcontractor fails to procure and maintain such insurance, if required, Turner shall have the right, but not the obligation, to procure and maintain the said insurance for and in the name of the Subcontractor and the Subcontractor shall pay the cost thereof and shall furnish all necessary information to make effective and maintain such insurance or at Turner's option, Turner may offset the cost incurred by Turner against amounts otherwise payable to Subcontractor hereunder.

**Bonds**    Article XXIV. The Subcontractor shall furnish to Turner a performance bond in the amount of **$N/A** and a separate payment bond in the amount of **$N/A** the form and contents of such bonds and the Surety or Sureties thereon to be satisfactory to Turner. Such bonds shall be furnished to Turner within ten (10) calendar days after Subcontractor has executed this Agreement or within such other time period agreed to by Turner in writing. In the event Subcontractor fails to furnish such bonds to Turner within the time period as hereinabove provided, such failure shall constitute a default under this Agreement in which event Turner shall have all of the rights and remedies provided in Article XI hereof with respect to default on the part of Subcontractor including, without limitation, the right to terminate this Agreement.

10

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.

Initial
Sub _KC_
TCCo _____

FORM 36F1 REV 2/12/01

Without limiting the responsibilities of Subcontractor and its Surety under the terms of this Agreement, Subcontractor and its Surety hereby agree to promptly pay all lawful claims of subcontractors, materialmen, laborers, persons, firms or corporations for labor or services performed or materials, supplies, machinery equipment, rentals, fuels, oils, tools, appliances, insurance and other items furnished, used or consumed in connection with the prosecution of the Work provided for in said Subcontract and any and all modifications thereof, and shall indemnify and save harmless Turner of and from all liability loss, damage and expense, including interest, costs and attorney fees, which Turner and/or its Surety may sustain by reason of Subcontractor's or its Surety's failure to do so.

Subcontractor and its Surety hereby agree to execute and deliver to Turner when requested in connection with the issuance of change orders under this Agreement, Rider "A" amendments (or other documents as Turner may require) increasing the amount (Penal Sum) of the Payment and Performance Bonds furnished by the Subcontractor. The reasonable premiums or other charges paid by the Subcontractor for the procurement of the Rider "A" amendments will be paid as a change to this Agreement.

**Severability**  Article XXV. In the event that any provision or any part of a provision of this Agreement shall be finally determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable laws by an authority having jurisdiction, such determination shall not impair or otherwise affect the validity, legality, or enforceability of the remaining provisions or parts of provisions of this Agreement, which shall remain in full force and effect as if the unenforceable provision or part were deleted.

**Entire Agreement**  Article XXVI. This Agreement constitutes the entire agreement between the parties hereto. No oral representations or other agreements have been made by Turner except as stated in the Agreement. This Agreement may not be changed in any way except as herein provided, and no term or provision hereof may be waived by Turner except in writing signed by its duly authorized officer or agent. Subcontractor acknowledges and represents that it completed and submitted to Turner a prequalification questionnaire, that all statements therein were true, accurate and complete, and remain true, accurate and complete, and that Turner has relied on such statements in deciding to enter into this Agreement. The marginal descriptions of any term or provision of this Agreement are for convenience only and shall not be deemed to limit, restrict or alter the content, meaning or effect thereof.

The said parties, for themselves, their heirs, executors, administrators, successors and assigns, do hereby agree to the full performance of all of the terms and provisions herein contained.

In Witness Whereof the parties to these presents have hereunto set their hands as of the day and year first above written.

In the Presence of: (Witness)          **TURNER CONSTRUCTION COMPANY**

X _Haveman_                           By: _____
                                          Scott Skidelsky – VP/GM


                                      SUBCONTRACTOR
In the Presence of: (Witness)         **E & H STEEL CONTRACTING, INC.**

X _Dick Campbell_                     By: _Lyle Charles_
                                      Official Title: __CHIEF OPERATING OFFICER__
                                      Print Name:    __LYLE CHARLES__

Subcontractor's State Unemployment Ins. No. __FLORIDA # 1539536__
           (Insert State and Register No. for State in which the Work is to be performed)

Subcontractor's License No. _____NA_____
           (Insert License No., if any, for State or locality in which the Work is to be performed)

Subcontractor's State Sales Tax Registration No. __FLORIDA # 78-8012063621-0__

Subcontractor's Federal ID No. __63-1202972__

11

Project #9110
File/CSI #05120 Structural Steel, 05500 Miscellaneous Metal
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.



Initial
Sub _LC_
TCCo _____

Sarasota Herald - Tribune  April 27, 2004
Sarasota, Florida

## SCOPE OF WORK
## for
### Structural Steel and Miscellaneous Metals

A. **TECHNICAL REQUIREMENTS:**
   The Work includes all items necessary to provide the structural steel and miscellaneous metal work including all labor, supervision, materials, tools, hoisting, rigging, scaffolding, equipment, taxes, overhead, profit, fringe benefits, insurances etc. at the above referenced project as shown or implied by the documents and conditions stated herein.

   The Work is based on Contract Documents. The drawings, details and specifications do not necessarily indicate or describe all work required for the full performance and completion of the requirements of the Contract Documents. On the basis of the general scope indicated, the subcontractor shall use all reasonable care to include those items necessary and/or implied, but not necessarily detailed, on the Contract Documents, including but not limited to the following specification sections:

   All of Division 1 – General and Contract Requirements are applicable to all portions of the work

   | | |
   |---|---|
   | 05120 | Structural Steel |
   | 05310 | Steel Deck, |
   | 05511 | Metal Stairs |
   | 05500 | Miscellaneous Metal |
   | 05721 | Ornamental Railings |

   **Documents**
   100 %Contract Documents List dated December 1, 2003.
   Project Manual dated January 13, 2004.

   ***All items pertaining to this scope are furnished and installed unless otherwise noted.***

   1. Mobilization.

   2. Layout and engineering from control points furnished by Turner/PSA.

   3. Fabricate, furnish and install complete, structural steel, to include but not necessarily limited to the following:
      3.1  Steel columns and beams.
      3.2  Castellated steel beams.
      3.3  Bent plate perimeter floor plate installed to comply with concrete deck levelness requirements.
      3.4  Perimeter angle at roof.
      3.5  Stub tube posts from mechanical pit to roof.
      3.6  Angle struts from perimeter roof beam to beam back.
      3.7  Clerestory tube framing/all HSS where indicated.
      3.8  Fabreeka pads.
      3.9  Grout
      3.10 Steel plates, tubes, angles etc. where indicated on the Architectural and Structural plans.
      3.11 Include custom cuts, shims, closure strips, angles not shown but required to complete the roof deck at the changes in angles, similar to detail 8/A.6207 and clip angles for masonry partitions.

"ATTACHMENT A"

Sarasota Herald - Tribune  April 27, 2004
Sarasota, Florida

## SCOPE OF WORK
## for
## Structural Steel and Miscellaneous Metals

    3.12    Provide a dumpster for all steel scrap, packing materials, trash etc. related to this scope of work.
    3.13    Electric power for welding will not be provided.
    3.14    Furnish one (1) copy of the latest NAAMA AMP 510, metal stair manual and one (1) copy of the latest NAAMA metal finishes manual for architectural and metal products.
    3.15    Provide designed perimeter rails of upright angles with top and mid rail 3/8" wire rope for fall protection at all slab edges. Provide in accordance with the latest OSHA requirements. Include flagging required by OSHA and maintenance of wire rope until completion of steel and metal deck work. Remove and dispose of safety rails, posts and cable as necessary to install stair construction. Maintain perimeter slab edge protection at all times during stair and rail installation.

4.    Furnish and install complete all floor and roof decking, including shear studs, accessories, bearing plates, and touch up galvanized or shop paint as necessary for a complete installation.

5.    Furnish and install complete the monumental stair to include but not necessarily limited to:
    5.1    Steel stringer framing system.
    5.2    Glass treads and landings.
    5.3    Stainless railings.
    5.4    Stainless floor plate.

6.    Furnish and install metal pan stairs, picket and single line rail.
    6.1    Concrete in-fill by others.
    6.2    Furnish and install metal closure strips from stringers to adjacent walls to close any gaps between the stringer and wall.

7.    Furnish and install complete miscellaneous metal to include but not necessarily limited to the following:
    7.1    Toilet partition supports.
    7.2    Steel frame at dumpster gate.
    7.3    Stair and rail at mechanical rooms.
    7.4    Elevator pit ladders and sump framing and grates.
    7.5    Folding partition supports.
    7.6    Angles for CMU support.
    7.7    Pipe bollards.
    7.8    Support for service desk.
    7.9    Support rods for projectors and projector screens.

8.    Furnish only embedded items to be installed by others.
    8.1    Include providing dimensioned plans for locating all embeds.

9.    Contract amount includes allowances for the following items furnished and installed. These allowances will be adjusted based on actual costs:

| | | |
|---|---|---|
| a. | Operable wall supports (3/A .6221) | $630 |
| b. | Operable wall supports (10/A .6221) | $210 |
| c. | Projector lift supports (11/A .6221) | $140 |
| d. | Toilet partition support framing | $3,500 |

"ATTACHMENT A"

Project #9110
CSI/TRADE #05120 Structural Steel, 05500 Miscellaneous Metals
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.
Page 2 of 7

Initials
Sub _AC_
TCCo ____

Sarasota Herald - Tribune                                                              April 27, 2004
Sarasota, Florida

## SCOPE OF WORK
## for
## Structural Steel and Miscellaneous Metals

10. Furnish and install framing for satellite dishes per documents.

11. Furnish and install grand stair tube steel stringers (grand stairs and railings at grand stairs by others).

12. Contract amount includes composite cleaning at $240/day/week x 12 weeks = $2,880. If composite cleaning is not required change order will be issued to deduct this amount. This subcontractor is responsible for cleaning everyday. Cost of composite cleaning is in addition to daily cleaning by contractor.

13. Cost of two (2) additional mobilizations for erection of steel is included in the contract amount.

14. Owner agrees to make payment to E & H Steel Contracting on raw material within 30 days of invoice date. This is contingent upon owner and Turner verifying raw material in the bonded and insured warehouse.

15. Surcharge/Escalation
    i) Contract amount includes a surcharge of $68/Ton for steel deliveries through the entire project.
    ii) In addition to surcharge of $68/Ton for the entire project. Contract amount includes $50,000 for the purpose of providing "not to exceed" contract amount. This amount will pay charge against unpublished "surcharge" for raw materials. Any monies not used for this surcharge (which is in excess of $68/Ton already included will be deducted from the contract amount with exception of $10,000 to be accounted to E & H Steel.

B.  **GENERAL REQUIREMENTS:**
    The Work includes all items necessary to provide the **Structural Steel and Miscellaneous. Metals Work** at the **Sarasota Herald Tribune** including all labor, materials, equipment, tools, hoisting, scaffolding, equipment, taxes, overhead, profit, fringe benefits, insurance's, etc.

    Provide all labor, supervision, materials, tools, hoisting, rigging, scaffolding, permits, equipment, and incidental items as required to perform all a **Structural Steel and Miscellaneous. Metals Work** the above referenced project as shown or implied by the documents and conditions stated herein.

    1. Subcontractor herein acknowledges that they have examined the project site and is fully informed as to the nature of the work and conditions relating to its completion. Any special precautions required in order not to disturb existing construction and/or school operations are included.

    2. Protect adjacent or contiguous work from damage by the installation of your work.

    3. ~~Coordinate your work with the work of all other trades through Turner's jobsite staff.~~

    4. This subcontractor understands that there will be "out of sequence" or "phased" work with respect to their work and has included such in this agreement including all mobilizations.

"ATTACHMENT A"

Project #9110                                                                                    Initials
CSI/TRADE #05120 Structural Steel, 05500 Miscellaneous Metals                         Sub  *dC*
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.                        TCCo _____
Page 3 of 7

Sarasota Herald - Tribune  
Sarasota, Florida

April 27, 2004

## SCOPE OF WORK
## for
## Structural Steel and Miscellaneous Metals

5. On a daily basis, subcontractor is responsible for the removal of its construction debris throughout the site including its staging area, subcontractor shall remove all trash and debris generated by meals and other non-construction related activities in the area designated by Turner. If no one is provided then Turner will provide the required manpower for subcontractor at a charge of $50.00 per man-hour. All determinations as to compliance to this requirement are to be made by Turner's Project Management and are final.

6. Safety Issues:
    a. Failure to follow Hard Hat and Safety Glasses procedures, the following applies:
        i. First Time: Employee reminded in writing.
        ii. Second Time: Employee reminded in writing, the Subcontractor fined $100.00 and a meeting is required between Turner Project Management and subcontractor's designated safety manager.
        iii. Third Time and each subsequent time: Employee removed from the project and previously levied fine is doubled. A meeting is required between Turner's Project Management and a corporate officer of the subcontractor.

7. Provide and maintain all fall protection equipment as needed to perform this scope of work. Subcontractor's attention is called to Turner's Safety Policy, which is to be strictly observed and rigidly enforced by the Subcontractor during the performance of the work under this subcontract. All personnel working at heights of six (6) feet and above the ground will be tied off, **NO EXCEPTIONS**. Subcontractors shall design and install any required or necessary fall protection systems, required to achieve 100% fall protection for Subcontractor's work force.

8. Provide a competent on-site superintendent during all hours of operation. The superintendent will have a Nextel phone keyed for communication with Turner's superintendent.

9. Subcontractors' On-Site Superintendent is to attend each weekly safety and coordination meeting and is required to bring an agenda outlining the activities needed for the following two (2) weeks.

10. The superintendent will turn in Daily Reports to the Turner field office no later than 9:00 A.M. the day after each workday. Failure to do so may result in a delay in processing the subcontractors monthly pay application.

11. Each superintendent is required to hold weekly safety meetings. All subcontractor employees are required to attend. A sign in sheet and a copy of the topic discussed must be submitted no later than Friday of each workweek. Failure to do so may result in a delay in processing the subcontractors monthly pay application.

12. Each subcontractor will provide Turner with a written company, project specific safety plan within 10 days after signing this agreement.

13. At any time, all subcontractor employees may be required to attend an emergency safety meeting called by the Turner field Superintendent.

"ATTACHMENT A"

Project #9110  
CSI/TRADE #05120 Structural Steel, 05500 Miscellaneous Metals  
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.  
Page 4 of 7

Initials  
Sub _dc_  
TCCo _____

Sarasota Herald - Tribune  
Sarasota, Florida

April 27, 2004

## SCOPE OF WORK
## for
## Structural Steel and Miscellaneous Metals

14. All subcontractors will provide MSDS sheets on all products to be used on this project. These sheets will be placed in a loose-leaf notebook with the company name, a table of contents, and each individual product will be tabbed.

15. Each subcontractor will be responsible for re-inspection fees for failed inspections.

16. Inspection request forms will be in the Turner field office. Each subcontractor will notify Turner in writing 24-hours in advance by completing this form.

17. Provide all layout and field dimensions necessary to perform the work. Reference tolerances in the specifications. In the case that there is a discrepancy with the use of others benchmark for your layout and field dimensions, this subcontractor will be responsible for all costs associated with the correction of their own work.

18. No AM/FM Radios, cassette players, MP3 players, and/or CD players will be allowed at this project at any time (the only exception will be in construction trailers).

19. All deliveries will be coordinated with the Turner superintendent. If materials need to be moved due to lack of coordination, it will be at the expense of the subcontractor.

20. This subcontract includes cost to relocate this subcontractors' lay-down/staging area twice for what ever the reason as directed by Turners superintendent.

21. Changes to the contract price will be considered only for owner changes to the contract documents. All change orders must include a complete break out of material, labor (for each level of manpower (i.e. laborer, apprentice, journeyman, foreman, superintendent, etc.), equipment, overhead, and profit. No change orders will be accepted without this breakout.

22. All subcontractors will park in designated parking areas only. Any violators will be towed at the subcontractors' expense.

23. Any equipment operators (i.e. lull. Crane) will need to submit copies of their certification to the Turner field office. No other operators are to use this equipment except those that Turner has on file.

24. Provide all product data submittals and shop drawings within two weeks after subcontract award. All warranties, as-built drawings, and closeout documents shall be submitted 60 days prior to substantial completion. As-built drawings shall be submitted to Turner weekly. As-built drawings shall indicate final elevations and location from a permanent, above ground, finish surface, benchmark. Updating the project as-built drawings will be acceptable, only if the subcontractor provides a 24-hour written request in advance. Failure to comply with any of these requirements within the specified time period, may result in a delay in processing the subcontractors monthly pay application.

25. There shall be no smoking permitted on the project site.

"ATTACHMENT A"

Project #9110  
CSI/TRADE #05120 Structural Steel, 05500 Miscellaneous Metals  
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.  
Page 5 of 7

Initials  
Sub _ZC_  
TCCo _[signature]_

Sarasota Herald - Tribune  
Sarasota, Florida

April 27, 2004

**SCOPE OF WORK**
**for**
**Structural Steel and Miscellaneous Metals**

26. The subcontractor shall cooperate with Turner and Program Manger in a Quality Assurance Program.

27. At no time will construction workers be allowed on the existing operational portions of the school campus without notifying the Turner superintendent 24-hours in advance.

28. Once work has commenced the subcontractor will access and exit the site only via the construction access road as designated by the Turner superintendent.

29. This subcontractor agrees to participate in the Contractor Controlled Insurance Program (CCIP).

30. This scope of work includes 0% of the contract amount for Minority/Women Business Enterprise based on Owner's program. Proper documentation required by Orange County Public Schools and Turner shall be submitted upon award and at each monthly pay application.

31. This subcontract includes all sales tax on all items. This subcontractor is required to participate in the Owner's tax exempt purchase order procedure if applied to this project for purchases in excess of $5,000.00.

32. This subcontract agreement includes sales tax and insurance.

33. This subcontractor shall provide insurance certificates in the amount of $5,000,000.00 for Comprehensive General Liability Insurance combined single limit and $1,000,000.00 for Comprehensive Automobile Liability Insurance per occurrence. This subcontractor is responsible for the costs of all deductibles.

34. This subcontractor agrees to provide an individual on site in a supervisory position (1 each for contract amount of $5MM or less and 2 each for contract amount of $5MM or more) who either has already passed on OSHA 30 hour course taken from a recognized industry training source within the past 3 years from the date of contract, or agrees to take the Turner Knowledge Network (TKN) course for OSHA 30 hour certification. If the training is required, it must be through the TKN. This subcontractor agrees to provide in writing the name(s) of the OSHA 30 hour trained.

35. All employee's working on this project will be "pre-screened" drug tested as well as random testing per the Turner substance abuse policy. Screening will take place at a Turner specified agency or as scheduled on site. The cost of the screening should be included in the Subcontractor's base price at $35 (subject to change) per employee per year for pre-screening. An additional charge for Random testing will be $60 (subject to change) per each employee for 10% of the subcontractors peak manpower per quarter. Cost of drug testing is included in the contract amount.

C. The following cost savings are accepted by the owner and are part of this contract:
None

"ATTACHMENT A"

Project #9110  
CSI/TRADE #05120 Structural Steel, 05500 Miscellaneous Metals  
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.  
Page 6 of 7

Initials  
Sub _XC_  
TCCo ____

Sarasota Herald - Tribune  
Sarasota, Florida

April 27, 2004

## SCOPE OF WORK
## for
## Structural Steel and Miscellaneous Metals

D. **SCHEDULING**

This subcontractor acknowledges that the said work will proceed in accordance with the Project Schedule as developed by the "Project Team" (Turner and its Subcontractors) and as revised by the "Project Team". Also, this Subcontractor agrees to participate in the requirements of the schedule as outlined in the contract documents. The work of this agreement will require that submittals, shop drawings, coordination drawings, be sequenced in accordance with the aforementioned schedule unless agreed to otherwise by the project team. The anticipated project start date is 5/1/04 and final completion by 7/1/05.

E. **EXCLUSIONS**
 1. Grand stairs and railings on grand stairs. Cost to provide grand stair tube steel stringer is included in the contract amount.
 2. Wood treads and risers at grand stairs.
 3. Bobrick type shelf @ minions.

F. **ALTERNATES**
 1. Furnish and install safety cable at roof (safety cable to be removed by others.    Add $4,500

 2. Delete grand stair (provided by others. Fill openings with structural steel and metal deck.    Add $8,777

G. **ALLOWANCES**
None

**END OF SCOPE OF WORK**

Project #9110  
CSI/TRADE #05120 Structural Steel, 05500 Miscellaneous Metals  
Subcontract Agreement #9110-001 – E & H Steel Contracting, Inc.  
Page 7 of 7

"ATTACHMENT A"

Initials  
Sub   
TCCo



# E&H STEEL CONTRACTING, INC.

Post Office Box 511 ■ 3635 East Hwy. 134 ■ Midland City, Alabama 36350

Telephone (334) 983-5636                                                    FAX (334) 983-6173

May 11, 2004

Durga D. Kalsi
Turner Construction Company
800 North Magnolia Avenue
Suite 500
Orlando, Florida 32803

Re:   Subcontract Agreement #9110-001
      Sarasota Herald – Tribune

Dear Mr. Kalsi:

Enclosed are two signed subcontract agreements for this project. No modifications, exclusions, or qualifications have been made to Turner's form 36F1 Rev. 2/12/01 in accordance with our prior agreement.

The requested information has been provided. The Attachment "A" seven-page scope of work document has been signed based upon the following Understandings and/or Modifications as though these Understandings/Modifications were printed on the face of Attachment "A".

## *Understandings and/or Modifications*

A.  It is understood that Division 05721 – Ornamental Railings is not included in E&H Steel's scope of work.
B.  It is understood that Item 1 – Mobilizations are limited to a maximum of three, one initial and two remobilizations.
C.  It is understood that item 3.9 – Grout is not included in E&H Steel's scope of work.
D.  It is understood that Item 3.12 – Scrap Steel Dumpster will only be provided on an "as needed" basis.
E.  It is understood that E&H Steel believes there is an error in Turner's references at Item 3.14 and that E&H Steel will be providing manuals from NAAMM not NAAMA (National Association of Architectural Metal Manufacturers).
F.  It is understood that Items 5.2, 5.3, and 5.4 are not included in E&H Steel's scope of work.
G.  It is understood that Item 7.2 is not included in E&H Steel's scope of work.
H.  It is understood that Item 7.7 is limited to a maximum of six total.

I. It is understood that at Item B, Sub-Item four on page three of Attachment "A" that mobilizations are limited to a maximum of three.

J. It is understood that at Item seven on page four of Attachment "A" E&H Steel will comply with OSHA Safety Standards 1926.760 Subpart R but does not have included in its pricing any design or installation of a system required to achieve 100% fall protection.

K. It is understood that E&H Steel had no knowledge of Item 20 on page five of Attachment "A" and accordingly did not provide any pricing in its proposal to Turner which is the foundation of this scope of work in Attachment "A".

L. It is understood that Turner accepts the payment terms/conditions as stated in Item 1 of E&H Steel's proposal.

*[handwritten margin note: See attached letter dated 5/14]*

Should you have any comments please call me.

Yours truly,

*[signature: Lyle Charles]*

Lyle Charles
Chief Operating Officer

enclosure

Cc:   Bill Grisham
      Andy Hicks
      Scott Quattlebaum

GLC/rlw