IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| E & H STEEL CONTRACTING, INC.   )<br>                                 )<br>        Plaintiff,              )<br>                                 )<br>vs.                              )<br>                                 )<br>TURNER CONSTRUCTION COMPANY      )<br>                                 )<br>        Defendant                ) | Case No. 1:05-CV-1135 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS OR TRANSFER AND MEMORANDUM IN SUPPORT**

Plaintiff, E&H Steel Contracting, Inc. ("E&H"), responds to the Motion of Defendant, Turner Construction Company ("Turner"), to Dismiss for Improper Venue or, in the alternative, to Transfer as follows:

1. Contrary to Turner's contentions, venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) and (3) because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district and/or because Turner is subject to personal jurisdiction in this judicial district.

2. Additionally, this case should not be transferred to New York because the forum selection clause in the General Contract between Turner and the Project Owner was not incorporated by reference into the Subcontract between Turner and E&H and, therefore, E&H is not bound by the forum selection clause in the

General Contract to sue Turner in New York. Alternatively, even if such clause were incorporated into the Subcontract, the forum selection clause is permissive and does not mandate that E&H file suit in New York.

3. Finally, this case should not be transferred to Florida under 28 U.S.C. §1404(a) where, as here, this Court is E&H's chosen forum and Turner has not, and cannot, establish that Florida is significantly more convenient.

## MEMORANDUM OF LAW

**1. Venue is proper in this Court.**

As established by the Affidavit of George Lyle Charles, E&H's Chief Operating Officer, attached hereto as Exhibit "A" and made a part hereof, venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because "a substantial part of the events or omissions giving rise to the [E&H's] claim occurred" in this judicial district and, therefore, the case should not be transferred. Additionally, Turner is admittedly subject to personal jurisdiction in this Court[1] and, therefore, venue is also proper in this Court pursuant to 28 U.S.C. §1391(a)(3).

Specifically, the Charles Affidavit establishes that:

1. E&H is an Alabama corporation with its sole place of

---

[1] Turner moved to dismiss on the basis of improper venue -- not lack of personal jurisdiction, thereby conceding that it is subject to jurisdiction in Alabama. In fact, as indicated by the Turner Annual Review 2004, Exhibit "B" attached hereto and made a part hereof, Turner has an office in Huntsville, Alabama.

business located in the Middle District of Alabama.

2.    E&H and Turner entered into a Subcontract whereby E&H agreed to detail, fabricate, deliver and erect the structural steel for the construction of the Sarasota Herald-Tribune in Sarasota, Florida for an original Subcontract amount of $1,417,595.00. Of the original Subcontract amount, only $360,000.00 was for the erection of steel which occurred in Florida.  As established hereinafter, the vast majority of E&H's performance of its Subcontract occurred in Alabama.

3.    Before the steel could be fabricated, E&H was required to prepare shop drawings from the contract drawings prepared by the Project Owner's design professionals.  Those shop drawings depicted the configuration and dimensions of each steel member that was fabricated for the Project.  The shop drawings were prepared for E&H by its California detailer, Pacific Detailing, Inc. ("Pacific"), with the assistance of E&H's engineering department who coordinated the preparation of the shop drawings.  E&H and Pacific prepared 407 shop drawings which E&H then transmitted from Alabama to Turner for review and approval prior to E&H's fabrication of steel for the Project.  E&H received the approved shop drawings in Alabama from Turner.

4.    The steel E&H fabricated for the Project consisted of 633.1 tons and approximately 3,026 major pieces which E&H then loaded onto 45 trucks in Alabama and shipped them to the Project.

5.      E&H's performance of its Subcontract and the administration of the performance of its Subcontract occurred in Alabama and required 7,111.5 shop manhours between April 2004 and May 2005 and required up to 25 welders and layout men in the fabrication shop and up to 10 persons in the office (with the exception of the preparation of some of the shop drawings). The work by office personal consisted of:

    a.   corresponding by telephone, facsimile and electronic mail from Alabama with Turner;

    b.   meeting with E&H employees to coordinate performance;

    c.   preparing applications for payment for submission to Turner;

    d.   processing payment(s) received from Turner.

    e.   obtaining lien releases from vendors and suppliers;

    f.   estimating and fabricating change order work; and

    g.   corresponding by telephone, facsimile and electronic mail from Alabama with its Florida erector, Coastal Steel.

As demonstrated, E&H's Subcontract was substantially performed in Alabama and Turner is subject to suit here. Therefore, venue is clearly proper in this Court pursuant to §1391(a)(2) and (3).

    **2.   The forum selection clause in the General Contract is not incorporated by reference into the Subcontract.**

Next, Turner contends that the suit should be transferred to New York because the General Contract between Turner and the project owner is incorporated by reference into the Subcontract between Turner and E&H, and the General Contract contains a forum selection clause which requires transfer to New York, citing <u>Richardson Engineering Company v. International Business Machines Corporation</u>, 554 F. Supp. 467 (D. Vt. 1981), <u>aff'd</u>, 697 F.2d 296 (2d Cir. 1981).

However, as demonstrated hereinbelow, the E&H - Turner Subcontract does not clearly and unequivocally incorporate the forum selection clause in the General Contract and, therefore, E&H is not bound to litigate this dispute with Turner in New York.

In <u>Richardson</u>, relied upon by Turner, the subcontractor sued the project owner -- not the general contractor -- and the project owner moved to dismiss the lawsuit on the basis that the forum selection clause in the general contract which obligated the subcontractor to sue the project owner in New York, was clearly and unequivocally incorporated by reference into the subcontract. The subcontract there, unlike the Subcontract here, bound the subcontractor to all terms of the general contract.

In response, the subcontractor argued that it did not read or even see the general contract until after it signed the subcontract and, therefore, it did not consent to the forum selection clause in the general contract. The Vermont District Court rejected the

subcontractor's argument and granted the project owner's motion, finding that the forum selection clause was clearly and unequivocally incorporated by reference into the subcontract and that the chosen forum was convenient to the subcontractor, which was based in New Jersey.

In Richardson, the subcontract stated that:

> Subcontractor shall be bound by <u>all the terms</u> of the [general contract] and assumes all the obligations of Contractor as stated therein, which are applicable to this Subcontract, including any provisions of the Contract required to be inserted or incorporated into this and other subcontracts, and all such terms, obligations and provisions of the Contract are hereby inserted and incorporated into this Subcontract as fully as though copied herein. Subcontractor hereby affirms that he has examined all Contract Documents, and agrees that he will not plead unfamiliarity with any of said documents in connection with any dispute which may arise hereunder or in connection with any claim for extra compensation.

<u>Id</u>. at 468.  (Emphasis added).

Here, unlike <u>Richardson</u>, the Subcontract between E&H and Turner <u>only</u> incorporates those provisions of the General Contract which relate to the scope, quality, character and manner of the work to be performed by E&H and does not incorporate provisions of the General Contract unrelated to E&H's work, such as the "dispute" clause governing the resolution of disputes between Turner and the Project Owner.  <u>See, e.g.</u>, <u>U.S. Steel Corp. v. Turner Const. Co.</u>, 560 F. Supp. 871 (S.D.N.Y. 1983).  <u>See also</u>, <u>Javed v. British</u>

Airways, PLC, 980 F.2d 1407, 1408 (11th Cir. 1993); J.S.&H. Construction Co. v. Richmond County Hospital, 473 F.2d 212 (5th Cir. 1973); Topro Services, Inc. v. McCarthy Western Constructors Inc., 827 F. Supp. 666 (D. Col. 1993); Advance Tank and Construction Co., Inc. v. Gulf Coast Asphalt Co., LLC, 2006 WL 253600 (Ala. 2006).

In fact, in U.S. Steel, Turner raised the identical issue there that it does here based on the identical subcontract clauses and the Court there held that the forum selection clause in the general contract between Turner and the project owner was not incorporated by reference into the subcontract and, therefore, the subcontractor was not bound by the forum selection clause in the general contract.

In U.S. Steel, the subcontract there, just like E&H's Subcontract with Turner, contained the following provisions:

Article I:

> The Subcontractor shall perform and furnish all the work... in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addendum thereto... and with the terms and provisions of the General Contract....

Article II:

> With respect to the Work to be performed and furnished by the Subcontractor hereunder, the Subcontractor agrees to be bound to Turner by each and all of the terms and provisions of the General Contract and the other Contract Documents, and to assume toward Turner all of the duties, obligations and responsibilities that Turner by those Contract Documents assumes toward the Owner, and the

> Subcontractor agrees further that Turner shall have the same rights and remedies as against the Subcontractor as the Owner under the terms and provisions of the General Contract and the other Contract Documents has against Turner with the same force and effect as though every such duty, obligation, responsibility, right or remedy ware set forth herein in full.

U.S. Steel, 560 F. Supp. at 873; E&H - Turner Subcontract, Exhibit "C" to E&H's Complaint. (Emphasis added).

According to the Court in U.S. Steel, the subcontract clauses upon which Turner relied there and upon which Turner relies here "bind subcontractor only to the prime contract provisions which relate to the scope, quality, character and manner of the work to be performed by the subcontractor." Id. at 873 - 874. In fact, the Court in U.S. Steel held that the "[p]rime contract provisions unrelated to the work of the subcontractor, such as a 'dispute' clause governing the resolution of monetary claims between the project owner and general contractor, are not incorporated by reference into a subcontract." Id. at 874 (citations omitted).

In so ruling, the U.S. Steel Court noted that the prime contract set forth the procedures to be followed by Turner in presenting and resolving its own monetary claims against the project owner and that the subcontract there, like the subcontract here, "contains no express reference either to [the disputes clause in] the prime contract, or the forum selection clause contained therein." Id. at 874. According to the Court:

> [h]ad the parties intended Article II of the subcontract to incorporate <u>all</u> of the provisions of the prime contract, as is now asserted by Turner, the express incorporation of Article 6 of the [owner's] General Conditions would not have been necessary. The express incorporation of this clause and the absence of any similar express provision concerning Article 11, suggests the parties did not intend to incorporate the forum selection clause into the subcontract, or that if Turner did so intend, it did not communicate its intention to U.S. Steel.

<u>Id</u>. (Emphasis in original). <u>Accord</u>, <u>Topro Services, Inc. v. McCarthy Western Constructors, Inc</u>., 827 F. Supp. 666, 668 (D. Col. 1993)("Had McCarthy intended to incorporate by reference the entire Prime Contract, Article 15 of the Prime Contract dealing with dispute resolution, or simply the forum selection clause, this could have been easily accomplished with the appropriate language"). <u>Compare</u>, <u>Scott Company of California v. U.S. Engineering Company</u>, 1994 WL 519493 (N.D. Cal. 1994)(subcontract provision that "all of [the owner's contract] are incorporated herein and made a part of this Subcontract" clearly and unequivocally incorporated provisions of the prime contract, including the forum selection clause).

As demonstrated, to incorporate a document by reference into a contract requires that the contract "clearly evidence an intent that the document be made part of it, though no specific language is required." <u>Topro Services, Inc</u>., 827 F.Supp. at 667. And,

> a reference made for a particular purpose, which purpose is clear from the contract, will

>     operate to incorporate the document only for
>     that particular purpose.

Id.

In fact, Turner has successfully argued that the limiting language in Article II of its Subcontract with E&H is ambiguous and, therefore, did not incorporate all of the provisions of the general contract. Specifically, in <u>Turner Construction Company v. Mideast Curtainwalls, Inc</u>., 543 N.E.2d 249 (Ill. App. Ct. 1989), the subcontractor claimed that the arbitration clause of the general contract was incorporated by reference into the subcontract by the terms of the very same Article II in the E&H - Turner Subcontract that Turner relies upon here. Turner successfully argued that Article II was ambiguous and, therefore, did not clearly and unambiguously incorporate the disputes clause of the general contract by reference.

As is clear from the holdings in <u>U.S. Steel</u> and <u>Mideast Curtainwalls, Inc</u>., Turner's contention that Article II of the E&H - Turner Subcontract clearly and unambiguously incorporates the General Contract by reference, including the forum selection clause, is disingenuous at best. For that reason, without more, this Court should rule against Turner, finding that the same Subcontract clause that Turner has used without revision for more than twenty (20) years and which even Turner has successfully argued was ambiguous does not clearly and unequivocally incorporate

the forum selection clause of Turner's General Contract and, therefore, does not require transfer of this case to New York.

### 3. Alternatively, the forum selection clause is permissive.

Assuming, arguendo, that Turner's Subcontract with E&H incorporates the forum selection clause in Turner's General Contract with the Project Owner, which is denied, the forum selection clause in the General Contract, which states that if the parties cannot resolve their disputes, they "shall have recourse to litigation in a court of competent jurisdiction located in the State of New York, New York County", is permissive only.

"Forum selection clauses are either mandatory or permissive . . . [and] [i]f the clause is permissive, then a party may bring suit either in the specified forum or someplace else." Reliance Nat'l Indem. Co. v. Pinnacle Cas. Assur. Corp., 160 F. Supp.2d 1327, 1330 (M.D. Ala. 2001).

In Reliance, the defendant sought transfer from Alabama to New York based on the forum selection clause in the parties' agreement which stated, in pertinent part, that:

> 13. *Binding Effect: Choice of Law*. ... The parties agree to submit to the jurisdiction of the appropriate Federal or State courts located in the State of New York for the purpose of any suit, action or other proceeding brought in connection with this Agreement and, the parties hereby consent that service of process in any such suit, action or proceeding may be served in the manner as any notice may be given hereunder as set forth in [another provision]. <u>Any and all disputes</u>

> <u>arising out of or in connection with this Agreement shall be resolved in the appropriate Federal or State court located in the State of New York</u>.

<u>Id</u>. at 1329. (Emphasis added). This Court found this clause to be permissive because "the forum selection clause does not designate the New York State and Federal Courts to the exclusion of other courts." <u>Id</u>. at 1330. Specifically, this Court found that:

> ... the forum selection clause relied on by Reliance does not foreclose litigation in Alabama. It merely provides that, if a case is brought in New York, then it shall be brought in an appropriate venue.

<u>Id</u>. at 1330.

In so ruling, this Court recognized that:

> [a]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion, or it leaves it in the control of one party with power to force on its own terms the appropriate forum.

<u>Id</u>. (quoting <u>City of New York v. Pullman, Inc</u>., 477 F. Supp. 438, 442 n. 11 (S.D.N.Y. 1979), <u>aff'd</u>, 662 F.2d 910 (2d Cir. 1981)).

The forum selection clause in <u>Reliance</u> is essentially identical to the forum selection clause in the Turner General Contract. Therefore, this Court should again hold, consistent with <u>Reliance</u>, that the forum selection clause in the Turner General Contract is permissive and does not contain "specific language", mandating suit in New York to the exclusion of any other forum.

    **4.** **<u>Florida is not a significantly more convenient forum</u>**.

Lastly, Turner argues that Florida is a "significantly more convenient forum" than Alabama and that, therefore, this case must be transferred to Florida under 28 U.S.C. §1404(a). In support, Turner submits the two-page Affidavit of Nicholas Slagg, Turner's Project Manager, who (1) identifies as persons who "have, or are likely to have information which is relevant," E&H's Florida erector, the Project Owner's representative, the structural engineer and the architect, all of whom have Florida addresses; (2) generalizes that "most, if not all, of the other potential witnesses" and their records are in Florida; and (3) urges that its efforts to complete the Project would be hindered by the relocation of its records and its witnesses to Alabama.

As demonstrated hereinbelow, Turner has not, and cannot, meet its burden of proving that Florida is a "significantly more convenient forum". Therefore, there is no basis for a §1404(a) transfer.

As this Court knows, each motion to transfer is reviewed on "a case-by-case consideration of convenience and fairness". <u>Hutchens v. Bill Heard Chevrolet Company</u>, 928 F. Supp. 1089, 1090 (M.D. Ala. 1996) (quoting <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988)). And, where as here, the plaintiff's chosen forum is in the district in which it resides, that chosen forum is held to be "highly esteemed", <u>Time, Inc. v. Manning</u>, 366 F.2d 690, 698 (5th Cir. 1966), and is entitled to great weight, <u>Grey v.</u>

<u>Continental Marketing Associates, Inc.</u>, 315 F. Supp. 826, 831 (N.D. Ga. 1970), thereby placing the burden on the defendant to demonstrate why the forum should be changed. <u>Time, Inc.</u>, 366 F.2d at 698. <u>See also</u>, <u>Hutchens v. Bill Heard Chevrolet Company</u>, 928 F. Supp. 1089, 1090 (M.D. Ala. 1996).

That burden requires the defendant to show "sufficient inconvenience to tip the balance of convenience <u>strongly</u> in the defendant's favor." <u>Hutchens</u>, 928 F. Supp. at 1091. (quoting <u>Prather v. Raymond Const. Co.</u>, 570 F. Supp. 278, 284 (N.D. Ga. 1983)). (Emphasis added). Generally, courts consider the following factors when deciding whether or not to transfer:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses and the availability of witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative ability of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system.

<u>Gould v. National Life Insurance Company</u>, 990 F. Supp. 1354, 1357-58 (M.D. Ala. 1998).

a.  <u>Convenience of the parties and location of documents</u>

As is evident from the Slagg Affidavit submitted by Turner to support §1404(a) transfer, Turner falls far short of "tip[ping] the balance of convenience strongly" in its favor. In fact, the very best that Turner can do is to shift the inconvenience to E&H. And, §1404(a) does not require transfer to a forum "which is likely to

prove equally convenient or inconvenient" or where transfer would "'merely shift the inconvenience from one party to the other,' or if the balance of all factors is but slightly in favor of the movant...". Folkes v. Haley, 64 F. Supp.2d 1152, 1154 (M.D. Ala. 1999)(quoting Johnston v. Foster-Wheeler Constructors, Inc., 158 F.R.D. 496, 502 (M.D. Ala. 1994)).

This case is strikingly similar to Sorrels Steel Company, Inc. v. Great Southwest Corporation, 651 F. Supp. 623 (S.D. Miss. 1986). In Sorrels, the general contractor there, like Turner here, urged that the lawsuit brought against it in Mississippi by a Mississippi steel fabricator should be transferred to Florida where the project and its records and witnesses were located.

Here, as in Sorrels, E&H will introduce at trial vast quantities of documents to prove its case, including the contract drawings and its shop and erection drawings, all of which are voluminous.

E&H acknowledges that Turner most likely has a similar quantity of documents which it will introduce at trial. As a result, as in Sorrels, this Court should recognize that where each party "possess a great number of documents which are relevant to the litigation," "whether the action is tried in [Alabama] or in Florida, one of the parties will be inconvenienced." Id. at 629. However, Turner has to show that "the original forum is inconvenient to it and that the plaintiff would not be

substantially inconvenienced by the transfer." Id. (Emphasis added). And, where, as here, the burden on each party of relocating documents is the same, Turner has not met its burden under §1404(a).

    b.   <u>Convenience of witnesses</u>

This Court, like <u>Sorrels</u>, <u>id</u>. at 629, agrees that "the most important factor in passing on a motion to transfer under §1404(a) is the convenience of the witnesses." <u>Hutchens</u>, 928 F.Supp. at 1091. In <u>Sorrels</u>, the general contractor contended that it needed nine witnesses to testify at trial, two of whom were employees and seven of whom were non-party witnesses and all of whom resided in Florida. The steel fabricator named ten witnesses, four of whom were non-parties and all of whom resided in Mississippi.

However, the <u>Sorrels</u> Court made it clear that:

> [t]he emphasis is not on the number of prospective witnesses, but rather on the materiality and importance of their anticipated testimony.

<u>Id</u>. at 629 (citing <u>Young v. Armstrong World Industries, Inc.</u>, 601 F.Supp. 399, 401 (N.D. Tex. 1984)). According to the <u>Sorrels</u> Court,

> [t]he party seeking a transfer for the convenience of witnesses must clearly specify the key witnesses and make a general statement of what their testimony will cover.

<u>Id</u>.

In <u>Sorrels</u>, the general contractor there, like Turner here,

>...claimed that [a non-party] is a key witness, [but] it has not given any reasons why it considers his testimony to be important or material. Rather, [the general contractor] simply takes the position that [the former employee] has knowledge of the relationship between Sorrels and [the general contractor], an assertion which is also made in reference to other witnesses whom it does not contend are material witnesses.

Id. at 629-30. See also, Holmes v. Freightliner, L.L.C., 237 F. Supp. 2d 690, 694 (M.D. Ala. 2002).

Again, Turner does not even attempt to identify its key witnesses -- much less their anticipated testimony. Instead, Turner identifies persons likely to have information and generally states that their "knowledge" is "essential" to Turner's defense. The law is clear -- Turner has not identified any key witnesses or their anticipated testimony. Therefore, transfer is not required for the convenience of Turner's witnesses.

On the other hand, E&H, in the Charles Affidavit, has identified the following key witnesses who are located in Alabama and who may be called by E&H:

1. G. Lyle Charles  -  E&H's Chief Operating Officer will testify to the negotiations and execution of the Subcontract, E&H's performance thereof, and the basis of its claims for delays and additional costs.

2. Andy Hicks  -  E&H's Project Manager will testify to E&H's performance of the Subcontract and the basis of its claims for delays and additional costs.

    3.    Jimmy Henderson - E&H's Owner and Production Manager may testify to problems encountered during fabrication of steel for the Subcontract and the resulting delays and additional costs.

    4.    Robert Thomas - E&H's Owner and Financial Officer may testify to the resulting additional costs.

    5.    Scott Quattlebaum - E&H's Engineering Manger will testify to problems E&H encountered during the shop drawings process.

    c.    <u>Ability of parties to bear the expense of changing forums</u>

Finally, this case should not be transferred in light of the probability of delay and resulting prejudice to E&H if the case is transferred to Florida. As stated in the Charles Affidavit, E&H has incurred losses and additional costs in excess of $700,000.00. Because of the disastrous financial impact of Turner's breaches of contract, every day of delay in a decision on the merits of this action is gravely prejudicial to E&H.

Additionally, E&H is a locally-based company serving the southeastern United States with moderate financial means as compared to Turner who was a member of the "Billion Dollar Club" in 2003, had over $2.6 billion in assets at the end of 2004 and had completed almost $7.0 billion in construction in 2004. <u>See</u> the 2003 "Billion Dollar Club" list and Turner Annual Review 2004, attached hereto as Exhibit "B" and made a part hereof. Moreover,

Turner has an office in Huntsville, Alabama and is registered to do business in Alabama.

E&H simply cannot bear the cost of transferring this case to New York or Florida while it is obvious that Turner will not be inconvenienced no matter where the case is litigated.

WHEREFORE, Plaintiff, E&H Steel Contracting, Inc., requests this Court to deny Turner Construction Company's Motion to Dismiss for Improper Venue or in the Alternative to Transfer.

                                          Respectfully submitted,

                                          E&H STEEL CONTRACTING, INC.
                                          By its attorneys,

                                          MOCKBEE HALL & DRAKE, P.A.

                                          By: /Mary Elizabeth Hall
                                               DAVID W. MOCKBEE
                                               MARY ELIZABETH HALL
                                               Lamar Life Building, Suite 1000
                                               317 East Capitol Street
                                               Jackson, MS 39201
                                               601-353-0035

OF COUNSEL:

FARMER, PRICE HORNSBY & WEATHERFORD L.L.P.
EDWARD M. PRICE, JR.
ELIZABETH GLASGOW
P.O. Drawer 2228
Dothan, Alabama 36302
334-793-2424

CERTIFICATE OF SERVICE

I, Mary Elizabeth Hall, do hereby certify that I have this day served the foregoing document by utilizing the court's electronic filing system to the following:

    Robert C. Lockwood
    Wilmer & Lee, P.A.
    100 Washington Street, Suite 200
    Huntsville, Alabama 35801

    ATTORNEYS FOR DEFENDANT

Dated:    February 21, 2006

                               By  /Mary Elizabeth Hall
                                  Mary Elizabeth Hall